# EXHIBIT 4

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

In the matter of the Life )
Term Parole Consideration )        CDC Number H-55090
Hearing of:               )
                          )
SANTIAGO MONTENEGRO        )
_____ )

CORRECTIONAL TRAINING FACILITY

SOLEDAD, CALIFORNIA

AUGUST 16, 2006

PANEL PRESENT:

JAMES DAVIS, Presiding Commissioner
NOREEN BLONIEN, Deputy Commissioner

OTHERS PRESENT:

SANTIAGO MONTENEGRO, Inmate
PATRICK SPARKS, Attorney for Inmate
LYNN CUTLER, Prosecutor
JOSE ZAVALA, Spanish Interpreter
ED MARTINEZ, Commissioner/Observer
Two Correctional Officers, Unidentified

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____  No          See Review of Hearing
_____  Yes         Transcript Memorandum

Don Larson -- Vine, McKinnon & Hall

ii

## INDEX

                                                              Page

Proceedings.......................................  1

Case Factors......................................  7

Pre-Commitment Factors............................ 12

Post-Commitment Factors........................... 17

Parole Plans...................................... 25

Closing Statements................................ 30

Recess............................................ 32

Decision.......................................... 33

Adjournment....................................... 36

Transcriber Certification......................... 37

--oOo--

1

1        **P R O C E E D I N G S**

2        **PRESIDING COMMISSIONER DAVIS:**  This is a Subsequent

3        Parole Consideration Hearing for Santiago Montenegro,

4        CDC number H-55090.  And before we get started, we do

5        have an interpreter with us today, so I will go ahead

6        and swear you in, sir.  Raise your right hand, do you

7        solemnly swear to translate from English to Spanish and

8        from Spanish to English to the best of your ability

9        accurately?

10       **INTERPRETER ZAVALA:**  I do.

11       **PRESIDING COMMISSIONER DAVIS:**  Thank you.  Today's

12       date is August 16th, 2006.  We're located at the

13       Correctional Training Facility in Soledad.  The inmate

14       was received on November 6th, 1992, from Santa Barbara

15       County, the life term beginning on January 23rd, 1993,

16       with a minimum eligible parole date of January 24th,

17       2003.  The controlling offense for which the inmate has

18       been committed is murder second with a weapon, case

19       number SN073860 -- 867, excuse me, better repeat that,

20       SN073867 -- count 1, Penal Code Section 187 second slash

21       12022.5 paren (a).  The inmate received a term of 15

22       years to life plus two.  This hearing is being tape

23       recorded, and for the purposes of voice identification,

24       we will each state our first and last name, spelling the

25       last name, and when it reaches you, Mr. Montenegro, if

26       you also will give us your CDC number, please, sir.  So

27       I will start and move to my left, I'm James Davis,

2

1    D-A-V-I-S, Commissioner.

2    **DEPUTY COMMISSIONER BLONIEN:**  I'm Noreen Blonien,

3    B-L-O-N-I-E-N.  I'm a Deputy Commissioner.

4    **ATTORNEY CUTLER:**  I'm Lynn Cutler, C-U-T-L-E-R.  I'm

5    the prosecutor.

6    **ATTORNEY SPARKS:**  Patrick Sparks, S-P-A-R-K-S,

7    attorney for Mr. Montenegro.

8    **INMATE MONTENEGRO:**  Santiago Montenegro, S, S, S ...

9    **PRESIDING COMMISSIONER DAVIS:**  Just your last name

10   for spelling.

11   **INMATE MONTENEGRO:**  Montenegro, M-O-N-T-E-N-E-G-R-O,

12   H-5590 (verbatim).

13   **INTERPRETER ZAVALA:**  Jose Zavala, Z-A-V-A-L-A,

14   Spanish interpreter.

15   **COMMISSIONER MARTINEZ:**  Ed Martinez, M-A-R-T-I-N-E-Z

16   Commissioner/Observer.

17   **PRESIDING COMMISSIONER DAVIS:**  We want the record

18   also to reflect we're joined by two correctional

19   officers here today, who will not be joining us, for

20   security purposes only, and will not be actively

21   participating in this hearing.  Mr. Zavala, if you will

22   read this Americans with Disabilities Act statement,

23   please, in Spanish.

24   **INTERPRETER ZAVALA:**  [ADA statement read in

25   Spanish.]

26   **PRESIDING COMMISSIONER DAVIS:**  According to our

27   records, on February 14th, 2006, together with staff in

1    the institution, you reviewed and signed a BPT Form

2    1073, indicating that you do not have any disabilities

3    that would qualify under the Americans with Disabilities

4    Act; however, you do need a Spanish interpreter, which

5    of course, is why Mr. Zavala is here today.  Has

6    anything changed since that time, sir?

7         **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  No.

8         **PRESIDING COMMISSIONER DAVIS:**  All right, very well.

9    And did you have an interpreter with you when you

10   reviewed your C-File?

11        **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

12        **PRESIDING COMMISSIONER DAVIS:**  All right.  And for

13   the psychological examination, which you took in 2002?

14        **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

15        **PRESIDING COMMISSIONER DAVIS:**  All right, very well.

16   You're able to hear us all right?

17        **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

18        **PRESIDING COMMISSIONER DAVIS:**  And you made it here

19   today under your own power?  You're able to walk here?

20        **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

21        **PRESIDING COMMISSIONER DAVIS:**  All right.  Is there

22   any reason that you can think of why you would not be

23   able to actively participate in this hearing today?

24        **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Excuse me?

25        **PRESIDING COMMISSIONER DAVIS:**  Is there any

26   reason -- anything that you can think of that would

27   preclude you from actively participating in this hearing

4

1    today?

2         **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  No.

3         **PRESIDING COMMISSIONER DAVIS:**  All right, very well.

4    Counsel, you're satisfied with that as well?

5         **ATTORNEY SPARKS:**  Yes.

6         **PRESIDING COMMISSIONER DAVIS:**  All right.  Thank

7    you.  This hearing is being conducted pursuant to Penal

8    Code sections 3041 and 3042 and the rules and

9    regulations of the Board of Prison Terms governing

10   parole consideration hearings for life inmates.  The

11   purpose of today's hearing is to once again consider the

12   number and nature of the crimes for which you were

13   committed, your prior criminal and social history, and

14   your behavior and programming since your commitment.

15   We've had the opportunity today to review your Central

16   File and your prior transcript, and you will be given

17   the opportunity to clarify the record as we proceed.  We

18   will reach a decision today and inform you of whether or

19   not we find you suitable for parole and the reasons for

20   our decision.  If you are found suitable for parole, the

21   length of your confinement will be explained to you.

22   Nothing that happens here today will change the findings

23   of the court.  The Panel is not here to retry your case,

24   the Panel is here for the sole purpose of determining

25   your suitability for parole.  Do you understand that,

26   sir?

27        **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

5

1          **PRESIDING COMMISSIONER DAVIS:**   Thank you.   This

2     hearing will be conducted in basically two phases, first

3     I will discuss with you the crime for which you were

4     committed, as well as your prior criminal and social

5     history; and Commissioner Blonien will then discuss with

6     you your progress since your commitment, your

7     counselor's report, psychological evaluation, parole

8     plans, and any literature of support or opposition as

9     they may exist.   Once that is concluded, the

10    prisoners -- the Commissioners, excuse me -- and the

11    District Attorney, and your attorney will have an

12    opportunity to ask you questions.   Questions that come

13    from the District Attorney will be asked through the

14    Chair, and you will respond back to the Panel with your

15    response.   Next, the District Attorney and then your

16    attorney will be given an opportunity to make a final

17    closing statement and then followed by your closing

18    statement.   Your closing statement should focus on your

19    suitability for parole.   The California Code of

20    Regulations states that regardless of time served, an

21    inmate shall be found unsuitable for and denied parole

22    if, in the judgment of the Panel, the inmate would pose

23    an unreasonable risk of danger to society if released

24    from prison.   And now you have certain rights, those

25    rights include the right to a timely notice of this

26    hearing, the right to review your Central File, and the

27    right to present relevant documents.   Counsel, are you

6

1   satisfied your client's rights have been met to date?

2       **ATTORNEY SPARKS:**  Yes.

3       **PRESIDING COMMISSIONER DAVIS:**  Thank you.  You have

4   an additional right, and that is to be heard by an

5   impartial panel.  Now you've heard your panel introduce

6   themselves this morning, is there any reason for you to

7   believe that we would not be impartial?

8       **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  (Inaudible).

9       **PRESIDING COMMISSIONER DAVIS:**  Thank you.  You will

10  receive a written copy of our tentative decision today.

11  That decision becomes effective in 120 days.  A copy of

12  the decision and a copy of the transcript will be sent

13  to you.  The Panel -- the Board -- has eliminated its

14  appeal process; if you disagree with anything in today's

15  hearing, you have the right to go directly to court with

16  your complaint.  You are not required to admit your

17  offense or discuss your offense; however, once again,

18  the Panel does accept the findings of the court to be

19  true.  Do you understand that, sir?

20      **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

21      **PRESIDING COMMISSIONER DAVIS:**  Okay.  Commissioner,

22  are we going to be dealing with anything from a

23  confidential file today?

24      **DEPUTY COMMISSIONER BLONIEN:**  There's no

25  confidential information.

26      **PRESIDING COMMISSIONER DAVIS:**  All right.  Then I'm

27  going to pass a checklist and documents to both counsel,

7

1    if you'll take a look at that to make sure we're all

2    operating off the same list of documents.  The

3    prosecution, do you have those documents as well?

4        **ATTORNEY CUTLER:**  Yes.

5        **PRESIDING COMMISSIONER DAVIS:**  All right.  Then

6    we'll mark that Exhibit 1.  Counsel, anything additional

7    you would like us to consider today?

8        **ATTORNEY SPARKS:**  No, thank you.

9        **PRESIDING COMMISSIONER DAVIS:**  All right.  Any

10   preliminary objections?

11       **ATTORNEY SPARKS:**  No.

12       **PRESIDING COMMISSIONER DAVIS:**  All right.  Will your

13   client be speaking with us today?

14       **ATTORNEY SPARKS:**  Yes, but he won't be talking about

15   the crime.

16       **PRESIDING COMMISSIONER DAVIS:**  All right.  If there

17   are no other matters -- if you'll raise your right hand.

18   Do you solemnly swear or affirm that the testimony you

19   will give at this hearing will be the truth and nothing

20   but the truth?

21       **INMATE MONTENEGRO:**  Yes.

22       **PRESIDING COMMISSIONER DAVIS:**  All right, thank you.

23   For a summary of the crime, I'm going to refer to the

24   probation officer's report starting on page 2 under the

25   heading of offense.  It starts on the first paragraph,

26   where it states that:

27            "On November 13th, 1985, Santa Maria police

8

1        officers responded to El Conquistador Bar at

2        210 South Bloosser, B-L-O-O-S-S-E-R,

3        Santa Maria, to investigate a shooting.

4        Officers found Antonio Hernandez Cardona,

5        C-A-R-D-O-N-A, age 22, slumped in the right

6        front passenger's seat of an automobile.

7        Officers observed a gunshot wound into the

8        front of his neck.  An ambulance was called and

9        he was taken to Maria Medical Center, where he

10       died at 2315 hours.  Doctors concluded the

11       victim died as a result of a gunshot wound to

12       the anterior neck slash chest, exiting through

13       the back.  A second entry wound in the left

14       shoulder revealed a .44 caliber bullet.  The

15       victim was shot three times.  Investigations

16       revealed the victim was the alleged boyfriend

17       of Lilliana Beltran, B-E-L-T-R-A-N, and they

18       had been inside the El Conquistador Bar.

19       Ms. Beltran left the bar and went outside to

20       the victim's car.  The defendant followed

21       Ms. Beltran out to the car, sat down in the

22       car, and tried to kiss her.  The victim came

23       out of the bar with two friends, saw what was

24       going on, and pulled the defendant out of the

25       car.  The victim and defendant verbally argued.

26       The defendant pulled a .44 Magnum pistol from

27       his waistband and fired three or four shots

9

1     into the victim.  The defendant fled the area.

2     The defendant told officers upon his arrest he

3     had hidden in a cardboard box in an alley until

4     daylight, had been in Reedley, California, and

5     had gone on to Mexico, and for the past three

6     years had been living in Guadalupe."

7     Under prisoner's version, as listed in the June 2002

8    Board Report, it states that in an interview for the

9    Montenegro -- an interview for this report, Montenegro

10   indicated that his previous interview with staff

11   psychiatrist Cheema, C-H-E-E-M-A, on 1/16/96, he

12   indicated that his present version remained the same.

13   Montenegro stated that he was involved in a fight with

14   an unknown --

15   **DEPUTY COMMISSIONER BLONIEN:**  Just a question.

16   Mr. Sparks, you're aware that in the '02 psych report

17   there's a different version.

18   **ATTORNEY SPARKS:**  Well, there's probably three

19   versions total.

20   **DEPUTY COMMISSIONER BLONIEN:**  Right.

21   **ATTORNEY SPARKS:**  So, I'm not sure which one you

22   want to refer to ...

23   **PRESIDING COMMISSIONER DAVIS:**  Well, we're going to

24   refer to all the ones that we have, actually, so we'll

25   have this and plus --

26   **DEPUTY COMMISSIONER BLONIEN:**  They're very --

27   **PRESIDING COMMISSIONER DAVIS:**  -- we have the psych

10

1    that we're going to --

2    **DEPUTY COMMISSIONER BLONIEN:** They're very

3    conflicting, and I don't know if he understood when he

4    talked to his counselor and referred to the psych

5    report, he really meant the '96 psych report where he

6    said he had no responsibility, or the '02 psych report

7    where he took full responsibility. And so since this is

8    only his first hearing, for Subsequent Hearing, I know

9    you want the record clear.

10    **ATTORNEY SPARKS:** His statement to me was that he

11    shot the victim.

12    **DEPUTY COMMISSIONER BLONIEN:** So that's in the '02

13    psych report. I believe in the '96 psych report he said

14    he did not.

15    **PRESIDING COMMISSIONER DAVIS:** Why don't we do this,

16    we'll go ahead and go through this part of this, that

17    will give us at least a chronology for now, and when we

18    get to this part of it, and then when we get to the

19    psych report, we'll cover that as well.

20    **DEPUTY COMMISSIONER BLONIEN:** Okay.

21    **PRESIDING COMMISSIONER DAVIS:** So we'll have

22    (inaudible). Is there a third?

23    **ATTORNEY SPARKS:** Maybe, but not right now.

24    **PRESIDING COMMISSIONER DAVIS:** All right. So we'll

25    have at least everything on the record for this time,

26    and then we'll get it from there.

27    **ATTORNEY SPARKS:** Okay.

11

1       **PRESIDING COMMISSIONER DAVIS:**  Montenegro stated he

2       was involved in a fight with an unknown person who was a

3       female, he was sitting in a bar with friends, the

4       subject reports that he, that his friend, shot the

5       victim when the subject's friend saw the victim was

6       going to kill the subject.  Montenegro denies that he

7       killed the victim.  Montenegro states that his friend

8       killed the person, and he is angry that authorities did

9       not take any action against this person who is

10      reportedly the culprit and is now living in Mexico, in

11      spite that he has given information to the authorities.

12      Montenegro does not take any responsibility for the

13      incident, but states that he deals with the situation

14      differently, by walking away from situations, from the

15      situations again.  Montenegro does have, does --

16      Montenegro does not have any remorse for the incident.

17      Montenegro reports that he feels bad that a life was

18      lost in the incident, but reports that the victim would

19      have killed him if the victim was not shot.  Montenegro

20      states that initially he took the responsibility for the

21      incident, as he wanted to save his friend, who

22      reportedly, was trying to save the subject, but now

23      feels that he should not have taken responsibility for

24      the crime.  And it is clear that there are conflicting

25      reports within the same Board Report, so we'll make sure

26      that we cover all of those, and, as always, if your

27      client would like to change his mind at some point in

12

1   time and comment to the Board about any of this, we're

2   certainly more than willing to hear him; however, we

3   understand and appreciate that he has an absolute right

4   not to do so.

5       **ATTORNEY SPARKS:**  I think when I made my statement

6   about there might be another version is that he was

7   interviewed the last time concerning the crime by the

8   Board of Parole Hearings, and that's where he made a

9   sworn statement under oath, and that's what he would be

10  sticking to, since they don't send me but the summary of

11  the decision, and I didn't go through the C-File to look

12  at that, because after the interview, that's what he was

13  saying to me.  That would probably be where his version

14  would be today, that in fact the official statement that

15  he made to the Board of Parole Hearings, at his initial

16  Hearing, would be the one that he would stick with.

17  That's what he informed to me the other day, just

18  recently, with the help of the interpreter.  I'm not

19  sure what that one says since I haven't read it, but

20  that would be the one.

21      **PRESIDING COMMISSIONER DAVIS:**  We'll pull the

22  transcript and take a look at it.  In the interim,

23  however, we'll go through and talk about -- in terms of

24  prior arrests, there are no, there's no indication of a

25  juvenile arrest.  And in terms of adult arrests, the

26  only arrest was in 5 of 1992 for driving under the

27  influence.  At that time he used the name of Santiago

13

1    Garcia.  Do you recall the arrest in 1992,

2    Mr. Montenegro?

3        **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Nothing that

4    came to the Board.  I told you that I haven't been

5    arrested since '91.

6        **PRESIDING COMMISSIONER DAVIS:**  Okay, so the arrest

7    in 1992 using the name of Santiago Garcia is not you?

8        **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  No.

9        **PRESIDING COMMISSIONER DAVIS:**  Okay.  Personal

10   Factors indicates that you were born in Mexico, you're

11   not married, and have no children?  And you are, you are

12   one of six children.  In terms of employment, you were

13   employed in a variety of positions including filleting

14   fish; working in, as a fieldworker for harvesting grape

15   crops?

16       **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

17       **PRESIDING COMMISSIONER DAVIS:**  I find that I have to

18   go through several places to try and find out more about

19   you in this report because it's not very consolidated.

20   You went through three years of grade school in Mexico?

21       **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

22       **PRESIDING COMMISSIONER DAVIS:**  Did you, was that the

23   extent of your formal education as a young person?

24       **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

25       **PRESIDING COMMISSIONER DAVIS:**  You were born and

26   raised in Mexico, you came to the United States

27   illegally in 1979?

14

1        **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

2        **PRESIDING COMMISSIONER DAVIS:**  And you were 23 at

3    that time, and you came with one of your brothers?

4        **INMATE MONTENEGRO:**  Si.

5        **PRESIDING COMMISSIONER DAVIS:**  And you would go back

6    and forth to your home, back into the United States

7    working?

8        **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

9        **PRESIDING COMMISSIONER DAVIS:**  Do you still keep in

10   contact with your family?

11       **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

12       **PRESIDING COMMISSIONER DAVIS:**  So you do have mostly

13   cards and letters and so forth?

14       **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

15       **PRESIDING COMMISSIONER DAVIS:**  Okay.  It indicates

16   that you began drinking beer at the age of 19, and would

17   drink three or four beers a day, that you really did not

18   drink to, to excess at any time?

19       **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  No.

20       **PRESIDING COMMISSIONER DAVIS:**  And in this, this is

21   out of the psych, this is out of the 2002 psychiatric

22   report, and they also, they also indicate a, an arrest

23   for driving under the influence of alcohol in the

24   United States.  Were you ever arrested for driving under

25   the influence of alcohol?

26       **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  That was

27   around (inaudible).

15

1     **PRESIDING COMMISSIONER DAVIS:**  Okay.  Did you use

2 your correct name at that time?

3     **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  No.

4     **PRESIDING COMMISSIONER DAVIS:**  What name did you

5 use?

6     **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  I think it

7 was Martinez.

8     **PRESIDING COMMISSIONER DAVIS:**  Okay.  Have you ever

9 been arrested other than that?  For anything?

10     **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  No.

11     **PRESIDING COMMISSIONER DAVIS:**  Okay.  You used

12 marijuana for about three or four months.

13     **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

14     **PRESIDING COMMISSIONER DAVIS:**  Okay.  You never

15 served in the Armed Forces?

16     **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  No.

17     **PRESIDING COMMISSIONER DAVIS:**  Let's see, this

18 indicates that you went up to five years in school in

19 Mexico.  It's going back to the probation officer's

20 report from some time back.  Did you, was it, did you do

21 all of your schooling in Mexico?

22     **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

23     **PRESIDING COMMISSIONER DAVIS:**  And it seems pretty

24 consistent in terms of drinking and so forth.  So, did,

25 how many members of your family came north with you?

26 Just your brother?

27     **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Excuse me?

16

1  **PRESIDING COMMISSIONER DAVIS:**  How many people came

2  up to the United States with you?  Just your brother?

3  **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Also one

4  sister and my parents did.

5  **PRESIDING COMMISSIONER DAVIS:**  Okay, so they all

6  came up?

7  **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

8  **PRESIDING COMMISSIONER DAVIS:**  And you stay in

9  contact with them as well?

10  **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  (Inaudible).

11  **PRESIDING COMMISSIONER DAVIS:**  Would you describe

12  your, your family life as being fairly normal?

13  **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

14  **PRESIDING COMMISSIONER DAVIS:**  Anything unusual, no

15  abuse ...

16  **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  No.

17  **PRESIDING COMMISSIONER DAVIS:**  Any alcoholism?

18  **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  No.  They do

19  drink, but a little.

20  **PRESIDING COMMISSIONER DAVIS:**  All right, all the

21  other members of your family doing well, nobody's had a

22  problem with law enforcement?

23  **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  No.

24  **PRESIDING COMMISSIONER DAVIS:**  Okay.  Good.  Is

25  there anything we haven't talk about regarding your

26  prior history, coming into the institution, that is,

27  your social history, your schooling, family life,

17

1    relations with family or friends, et cetera, that you

2    think is important for the Panel to understand, that we

3    haven't discussed so far?

4        **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  No.

5        **PRESIDING COMMISSIONER DAVIS:**  All right.

6    Commissioner, do you have any questions?

7        **DEPUTY COMMISSIONER BLONIEN:**  I don't.

8        **PRESIDING COMMISSIONER DAVIS:**  Mr. Montenegro, if

9    you think of something as we proceed, if something else

10   comes to mind that you think is important that we

11   understand, please take the opportunity to just let us

12   know what that is.  All right.  And I'll ask you to turn

13   your attention to me.  Commissioner Blonien.

14       **DEPUTY COMMISSIONER BLONIEN:**  Mr. Montenegro, it's

15   my job to go over what you do in the institution since

16   your last hearing.  I'm going to go over your psych

17   report -- and I read your C-File, I've read the Board

18   report, and I saw you did a review of your C-File, so if

19   I forget anything or miss anything at the end of my

20   presentation, you can -- we'll have a discussion.  So,

21   your last hearing was June 18th, of 2002, and the

22   decision was for a four year denial, and the Panel

23   recommended that you become and remain

24   disciplinary-free, upgrade vocationally and

25   educationally, and participate in self-help.  So, your

26   classification score is 19, and your custody level is

27   medium A, and 19 is as low as possible for a lifer

18

1    inmate.  You, your counselor, Counselor Studebaker

2    (phonetic), completed the report in June of '06, and

3    Dr. William Garmard, G-A-R-M-A-R-D, completed his psych

4    report in March 29th of '02.  So, in, in looking at what

5    you've done in the institution, you have remained

6    disciplinary-free, you only have one 115, and that was

7    in 2002, right before your last parole hearing.  You did

8    have a 128 on 3/8/04 for contraband.  What did you have?

9         INMATE MONTENEGRO TRHOUGH INTERPRETER:  A 128,

10   probably, a classification, but I didn't go to work.

11        DEPUTY COMMISSIONER BLONIEN:  Oh.  It talks about a

12   single-edge razor blade, box cutter, inside his assigned

13   locker.

14        INMATE MONTENEGRO TRHOUGH INTERPRETER:  That's true;

15   that's another one.

16        DEPUTY COMMISSIONER BLONIEN:  And then you have one,

17   3/5/02, and that was about reporting to work, and that

18   since you did not get a shower after working, you would

19   not report to work until you showered, is what you said.

20   You got a 128 for that.  In total, you have one, two,

21   three, six 128s, which are minor.  So when we talk about

22   education, you're talking to the Commissioner, and it

23   was unclear to me whether you had three years of

24   education in Mexico or five years of education.

25        INMATE MONTENEGRO TRHOUGH INTERPRETER:  As I recall,

26   it was only three years that I went.  I went to school

27   here for about five or six years.

19

1        **DEPUTY COMMISSIONER BLONIEN:**  And you're in a

2    difficult position here because you've been terminated

3    from education, they feel you've worked really hard, but

4    you're as far as you can go.  And you haven't attained a

5    sixth grade reading level, so you're not eligible for

6    Vocational Training programs, correct?  You know that?

7        **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

8        **DEPUTY COMMISSIONER BLONIEN:**  So, before you came in

9    here, you were a fish cutter and a mushroom farmer, but

10   you haven't really been able to pick up a vocation here

11   that translates into the community easily.  But, you are

12   a worker.  You're a very good worker, and since your

13   last hearing, you've been a Porter, and you work in

14   Waste Management now.  And I looked at your reports from

15   your supervisor, and every single one since your last

16   hearing says you are excellent in every category, you're

17   on time, you do the job, you're enthusiastic, you're

18   respectful to staff, to other inmates -- so do you enjoy

19   this job?

20       **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Enjoy the

21   job, yes.

22       **DEPUTY COMMISSIONER BLONIEN:**  And did you do

23   Recycling too?

24       **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

25       **DEPUTY COMMISSIONER BLONIEN:**  So tell me about that.

26   Tell me about your job.

27       **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  What I do

20

1   there, is I clean up the, the lard there, clean the cans

2   where they empty the garbage, somebody asks me, asks me

3   to clean an office, to wax it.

4       **DEPUTY COMMISSIONER BLONIEN:**  So, that's a skill

5   that translates into the community, whether you go to

6   California or Mexico.  Now you do have a U.S./INS hold

7   on you, correct?

8       **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

9       **DEPUTY COMMISSIONER BLONIEN:**  And after we talk

10  about what you've done in the institution, we're going

11  to talk about your parole plans.  You're also very

12  active in AA, and there's chronos in there from your

13  last hearing covering the years '02, '03, '04 -- are you

14  still in AA?

15      **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  I'm

16  attending not at this moment, because there's been a lot

17  of lockdown.

18      **DEPUTY COMMISSIONER BLONIEN:**  Yeah.  And when you

19  attend, do you attend AA in Spanish?

20      **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

21      **DEPUTY COMMISSIONER BLONIEN:**  And I noticed on one

22  of the chronos your sponsor says that you are fully

23  participating, and you're very enthusiastic.

24      **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

25      **DEPUTY COMMISSIONER BLONIEN:**  So you've worked

26  through the steps?

27      **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Not yet, I

21

1    make some mistakes.

2        **DEPUTY COMMISSIONER BLONIEN:**  So, when Commissioner

3    Davis was reading about your crime, and about your

4    history, you said you didn't have a problem with

5    alcohol, that you were a social drinker, but the crime,

6    you know, was committed around a bar atmosphere, and I

7    know you're not talking about the crime, so I don't know

8    how much you were drinking that night, but one of the

9    concerns of the Panel would be if you were in a like

10   situation in a bar in a social atmosphere, if you would

11   have the same bad judgment, and what you've learned

12   inside the institution that would help you make good

13   decisions if you were released to the community.  And

14   I'd like you to tell me what you've learned in that

15   area.

16       **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  I didn't

17   understand that.

18       **DEPUTY COMMISSIONER BLONIEN:**  We're worried about

19   the circumstances of your crime involved in a bar area.

20   So if released, what have you learned in prison that

21   would keep you from making bad decisions in the

22   community?

23       **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Well, the

24   time I've been here has taught me -- biggest mistakes I

25   made in my life.  And that is attending -- I believe

26   that if I were given a date, a release date, one day

27   that I would never go back to one of those.

22

1      **DEPUTY COMMISSIONER BLONIEN:**  And is there -- like

2    going through AA, people talk about the steps.  And they

3    talk about how the steps help them make better

4    decisions.  So, since he hasn't worked through any

5    steps, what's going to help him?

6      **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  What would

7    help me is to hear what these people have gone through.

8      **DEPUTY COMMISSIONER BLONIEN:**  I know in this

9    institution, there's other programs available, like

10   anger management.  Has he tried to go to any of those

11   programs?

12     **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  I know I

13   committed a violent crime.  That was in (inaudible).

14     **DEPUTY COMMISSIONER BLONIEN:**  I would think there

15   was a lot of anger involved in this crime.

16     **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  (Inaudible).

17     **DEPUTY COMMISSIONER BLONIEN:**  He, does he read books

18   in Spanish to himself?

19     **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Very little,

20   not yet.

21     **DEPUTY COMMISSIONER BLONIEN:**  Do you know how to

22   read in Spanish?

23     **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  (Inaudible).

24     **DEPUTY COMMISSIONER BLONIEN:**  A little?  That could

25   be a problem.  How little can you read?

26     **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  To read like

27   this, take about five minutes.

23

1        **DEPUTY COMMISSIONER BLONIEN:**  That, that is

2      difficult.  When you were talking to the psych in '02,

3      Dr. Garmard, he stated that you have no mental health

4      issues, you have no mental illness, that you're lucky

5      enough to have no physical illnesses, he doesn't note

6      any drug abuse or alcohol abuse by history or in

7      remission.  And he gives you what we call a Global

8      Assessment Functioning score of 85, which means that

9      you're an extremely high functioning inmate and you

10     would be a highly functioning individual in the

11     community if released.  In talking -- he talked to you

12     right before you got this 115, and he states that the

13     inmate has not received any 115 violations for violent

14     behavior, and the one 115 that you did have was for

15     refusing to work, which you did.  "Therefore, it is felt

16     that he would pose a less than average risk for violence

17     when compared with this (inaudible) inmate population.

18     If released to the community, his violence potential is

19     estimated to be no higher than that of the average

20     citizen in the community."  And this is based on the no

21     evidence of previous violent behavior or any violent

22     behavior since your offense.  "Although he did flee the

23     scene of the crime and evaded arrest for six years and

24     formerly appeared to lack remorse for his crime, he has

25     since accepted full responsibility."  And there, he's

26     alluding to the fact that when he was talking to you

27     about the crime, that during the conversation, the

24

1    doctor states that you changed your story and

2    admitted -- he said, the doctor said, "However, when

3    more of his own words were quoted back to him, such as

4    his early admission that the gun was his, that he got

5    the gun out of the trunk of his friend's car, that he

6    threw the gun in the grass after the shooting when he

7    fled the scene, he suddenly admitted shooting the

8    victim.  When asked why he denied that it had to do with

9    jealousy over the woman, he simply said that he shot the

10   victim after the victim made a verbal threat against

11   him.  He then admitted that his mistake was to shot

12   another man over a verbal threat and said he regrets

13   everything that he did.  He told about how he had lied

14   in the past, saying that one friend shot the victim in

15   order to protect the inmate from being shot or that his

16   other friend, Pedro, was to be blame, not him.  The

17   inmate's sudden honesty in the middle of the BPT

18   evaluation is rare, and he is to be commended for taking

19   full responsibility for his actions."  When, we're not

20   going to talk about the crime, but I did want to ask you

21   about remorse for the victim.  Do you have a comment?

22          INMATE MONTENEGRO TRHOUGH INTERPRETER:  (Inaudible.)

23          DEPUTY COMMISSIONER BLONIEN:  Do you ever think

24   about the victim's family?

25          INMATE MONTENEGRO TRHOUGH INTERPRETER:  Yes.

26          DEPUTY COMMISSIONER BLONIEN:  In going over what

27   you've been doing in the institution, have I covered

25

1    everything?  So, a typical day for you, you go to work,

2    correct?

3          **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

4          **DEPUTY COMMISSIONER BLONIEN:**  My recorder can't

5    (inaudible).  Do you work out?

6          **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  A little.

7          **DEPUTY COMMISSIONER BLONIEN:**  Do you go to church?

8          **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Not really.

9          **DEPUTY COMMISSIONER BLONIEN:**  Do you, what do you

10   do?

11         **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  I go to work

12   out after working, I go use the shower, wait for dinner.

13         **DEPUTY COMMISSIONER BLONIEN:**  I want to talk to you

14   about your parole plans.  I don't see any letters from

15   your family.

16         **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  (Inaudible).

17         **DEPUTY COMMISSIONER BLONIEN:**  The letters have to be

18   new because four years is a long time and circumstances

19   change.  So, if you were deported to Mexico, where would

20   you go?

21         **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  In Mexico,

22   where my parents have a house in Mexico.  And they told

23   me that I could live there as long as I wanted.

24         **DEPUTY COMMISSIONER BLONIEN:**  And do your parents

25   have a ranch?

26         **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  No, they

27   have a home, but not a ranch.

26

1    **DEPUTY COMMISSIONER BLONIEN:**  And what city?

2    **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Colima.

3    **DEPUTY COMMISSIONER BLONIEN:**  Near Manzanillo?  Very

4    nice, where the volcanoes are.  Very nice.  And what

5    would you do for work?

6    **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  My thoughts

7    are if I'm released one day is go plant corn, and also

8    raise cattle.

9    **DEPUTY COMMISSIONER BLONIEN:**  Where would you get

10   the cattle?

11   **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  I would buy

12   them.

13   **DEPUTY COMMISSIONER BLONIEN:**  You have a lot of

14   money?

15   **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  I don't, but

16   I can by working.

17   **DEPUTY COMMISSIONER BLONIEN:**  So do you understand

18   that if we parole you, we need a letter from your family

19   saying that you can live there, that they will help you

20   live until you can get a job, that there are job

21   opportunities there for you, and that their support for

22   you -- because after you've been in prison a long time,

23   to be free you need support to be successful.  Do you

24   understand that?

25   **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

26   **DEPUTY COMMISSIONER BLONIEN:**  And if by chance the

27   U.S./INS hold doesn't materialize, where would you live

27

1   in California?

2       **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  I have an

3   aunt who I (inaudible).  She would give me a place to

4   work and a place to stay.

5       **DEPUTY COMMISSIONER BLONIEN:**  And where does she

6   live?

7       **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Santa Maria.

8       **DEPUTY COMMISSIONER BLONIEN:**  So you would need, you

9   know, a letter from her, saying that you could live

10  there, that she'll help you find work, that she'll give

11  you money until you find work.  How old are you now?

12      **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Fifty.

13      **DEPUTY COMMISSIONER BLONIEN:**  Okay.  So you're still

14  a young man, and when you do get out, you'll be able to

15  work.  But you'll have to have all this in order.  This

16  is your responsibility, because we can't just say we

17  think he's going to Mexico, we have to have

18  verification.  And it's a hard job for you to get that

19  verification, so you have to start work on it right

20  away.  And then in terms of what you do in the

21  institution, you have to do more.  You were given a

22  sentence of life with a possibility of parole, and you

23  have to earn your way out of here.  And the way you do

24  it is you work really hard, which you do; you don't get

25  any 115s or 128s, which you're good at; and you go to

26  programs that help you when you're released to make the

27  right decisions.  And then you come to Board and you

28

1    tell us what you've been doing, or you have chronos in

2    your file.  So just going to AA is good, but it's not

3    enough.  Do you have a question?

4         **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  What other

5    programs do you recommend?

6         **DEPUTY COMMISSIONER BLONIEN:**  Well, you have to go

7    out there and see what's available.  You talk to all the

8    other inmates that are in your situation that don't

9    speak English so well.  I've been here and those inmates

10    do get dates, and you have to ask them what's caused

11    them to be successful.  And it's different for every

12    inmate.  If I tell you what to do, that's not you making

13    your decision to get you out.  But there, there are

14    things out there, and you have the ability to do well.

15    So I hope you'll do that.  We also sent out notices to

16    local law enforcement and interested parties, and

17    although I didn't receive any letters, the District

18    Attorney from southwestern Santa Barbara is represented,

19    and at the appropriate time, he will be able to ask you

20    questions and/or make a closing statement.  And with

21    that I return to the Chairperson.

22         **PRESIDING COMMISSIONER DAVIS:**  All right, thank you.

23    Mr. Montenegro, if we can just try this from a different

24    perspective perhaps, is there one of the steps that

25    you've been working on that you think about or that you

26    find especially appropriate for you?

27         **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  One of the

29

1   things I like to do is like a (inaudible) hobby card,

2   but they denied it.

3       **PRESIDING COMMISSIONER DAVIS:** Okay.  With regard to

4   the Alcoholics Anonymous --

5       **DEPUTY COMMISSIONER BLONIEN:**  I need to turn the

6   tape over.

7       [Whereupon, the tape was turned over.]

8       **PRESIDING COMMISSIONER DAVIS:**  With regard to

9   Alcoholics Anonymous, is there one of the steps that,

10  that you have been listening to, that you think is

11  especially helpful for you?

12      **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  I don't

13  remember any of them because most of the time

14  (inaudible).

15      **PRESIDING COMMISSIONER DAVIS:**  Okay.  That may be

16  something that I think you were -- you were given some

17  good advice earlier by, by Commissioner Blonien, and I

18  think that if you want to also follow-up with that idea

19  of maybe committing some of these steps to, maybe not

20  verbatim, but a good understanding of what they mean for

21  you in terms of the crimes, your feeling of remorse for

22  the victim, things that you can, that you can take an

23  active step in, would be helpful for you.  All right.

24  Commissioner Blonien, any other questions?

25      **DEPUTY COMMISSIONER BLONIEN:**  I don't.

26      **PRESIDING COMMISSIONER DAVIS:**  All right.  Does the

27  District Attorney have questions?

30

1      **ATTORNEY CUTLER:**  I do not.

2      **PRESIDING COMMISSIONER DAVIS:**  Mr. Sparks?

3      **ATTORNEY SPARKS:**  No, thank you.

4      **PRESIDING COMMISSIONER DAVIS:**  Closing then?

5      **ATTORNEY CUTLER:**  Just briefly, this was an

6      extremely stupid case, the only thought he demonstrated

7      was his ability to escape.  Now that the Commissioner

8      has quietly eviscerated his plans, i.e., she's exposed

9      the fact that he has modest vocational abilities, albeit

10     a good work ethic; he has modest employment skills;

11     limited employment opportunities, if any; he hasn't

12     taken advantage of the AA program; he has limited

13     literacy; and the picture is painted very grim for a man

14     who, however he wound up in Mexico or found his way back

15     to Santa Maria, could very well find himself back at the

16     dives on Bloosser Street in Santa Maria and committing

17     the same sort of crime that got him in here.  I ask that

18     you deny his request.  Submitted.

19     **PRESIDING COMMISSIONER DAVIS:**  All right, thank you.

20     Mr. Sparks.

21     **ATTORNEY SPARKS:**  To his credit, Mr. Montenegro has

22     completed some AA, he does have some contact with the

23     country of origin where deportation is eminent, so the

24     requirement that he complete some form of GED would be

25     nice, but perhaps either unrealistic because of his

26     motivation or unnecessary because of the status that he

27     would have as a foreign citizen.  Learning U.S. History

1  may not be something relevant for purposes of his status
2  as a foreign national.  I understand the Board of Parole
3  Hearings would like to see somebody become all they can
4  be while they're incarcerated -- he was pleasant with
5  the Panel today.  He's grown and matured while he's been
6  incarcerated.  He's only had one 115 recently, and that
7  was nonviolent.  The correctional counselor's report in
8  '02 deemed him to be a low threat.  That must mean that
9  he's doing some of the things, institutionally, that
10  would show that he would be a good citizen if released
11  to the community, because he's been a good citizen while
12  incarcerated.  This was, in my opinion, an unfortunate
13  set of circumstances that was aggravated by alcohol use
14  and would not likely happen again, particularly if
15  Mr. Montenegro abstained from the use of alcohol.  He's
16  talked about his plan of recovery, and has indicated
17  that that's not something he's interested in.  And he
18  does have employable skills from institutional work.
19  I'll submit it with that.  Thank you.
20      **PRESIDING COMMISSIONER DAVIS:**  All right, thank you.
21  Mr. Montenegro, now is your opportunity to address the
22  Panel directly and talk to us about your suitability for
23  parole.
24      **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Talk to you
25  about what?
26      **PRESIDING COMMISSIONER DAVIS:**  About why you feel
27  that you're suitable for a parole.

32

1        **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  (Inaudible)

2    if I were to be released, I would go to Mexico and work

3    at a ranch down there.

4        **PRESIDING COMMISSIONER DAVIS:**  Is that all, sir?

5        **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

6        **PRESIDING COMMISSIONER DAVIS:**  All right, thank you

7    very much.  We will now recess for deliberations.

8                    **R E C E S S**

9                    --o0o--

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

33

1    **CALIFORNIA BOARD OF PAROLE HEARINGS**

2    **D E C I S I O N**

3    **DEPUTY COMMISSIONER BLONIEN:**  We're on record.

4    **PRESIDING COMMISSIONER DAVIS:**  I want the record to

5    reflect that all those previously identified as being in

6    the room have returned.  And this is in the matter of

7    Santiago Montenegro, CDC number H-55090.  The Panel

8    reviewed all information received from the public and

9    relied on the following circumstances in concluding that

10   the prisoner is not suitable for a parole and would pose

11   an unreasonable risk to society or a threat to public

12   safety if released from prison.  We have come to this

13   conclusion first by the commitment offense:  The offense

14   was carried out in an especially callous manner, and the

15   motive for the offense was very trivial in relation to

16   the offense.  The conclusion, and these conclusions are

17   drawn from the statement of facts, wherein the prisoner

18   was convicted of the senseless death by use of a firearm

19   of the victim.  We find that there is no previous

20   record.  With regard to institutional behavior, we find

21   that you have programmed in a limited manner while

22   incarcerated, that you have seven 128(a) counseling

23   chronos, the last of which was in 3 of '05, and one

24   serious 115 disciplinary report, the last of which

25   was -- the only, actually -- occurred in 3 of '02.  The

26   psychological report of March 2002 by Dr. Garmard was

27   **S. MONTENEGRO    H-55090    DECISION PAGE 1    8/16/06**

1    supportive, but is dated and does not consider the most

2    recent 115 disciplinary report.  With regard to parole

3    plans, we find that you do not have viable residential

4    plans in either the United States or Mexico, and do not

5    have acceptable employment plans in either the United

6    States or Mexico.  With regard to the 3042 notices, we

7    note that the District Attorney from Santa Barbara

8    County is here in person by representative, and does

9    oppose parole.  Nevertheless, we do want to commend you

10   for your attendance in AA in Spanish and your -- and

11   again, your attendance there -- and your work as a

12   Porter and in Waste Management with excellent work

13   reports for being on time, respectful to staff and

14   inmates.  However, these positive aspects of behavior do

15   not outweigh the factors for unsuitability.  And in a

16   separate decision, the Hearing Panel finds that you have

17   been convicted of murder, and it is not reasonable to

18   expect that parole would be granted during the next

19   three years.  We come to this conclusion first by the

20   commitment offense itself, in that the offense was

21   carried out in an especially callous manner.  The motive

22   for the crime was very trivial in relation to your

23   offense.  These conclusions are drawn from the statement

24   of facts wherein the prisoner was convicted of the

25   senseless death by use of a firearm of the victim, that

26   you have programmed in a limited manner while

27   **S. MONTENEGRO   H-55090   DECISION PAGE 2   8/16/06**

35

1   incarcerated.  Disciplinaries while incarcerated

2   includes seven 128(a)s, the last of which was in 3 of

3   '05, and one serious 115 disciplinary report, the last

4   that occurred in 3 of '02.  The psychological report of

5   March 2002 by Dr. Garmard was supportive, but dated, and

6   does not consider the most recent 115.  With regard to

7   parole plans, we find that you do not have viable plans

8   for the United States or Mexico, and do not have

9   acceptable employment plans for the United States or

10  Mexico.  With regard to 3042 notices, we note that the

11  District Attorney from Santa Barbara County is here in

12  person by representative and does oppose parole.  With

13  regard to recommendations, the Panel recommends that you

14  have no more 128s or 115s, and as available, that you

15  upgrade vocationally and educationally.  And in terms of

16  education, one of the things we want to recommend to you

17  is that you use your time to, as available, to

18  participate in programs that will help you with your

19  reading or being, with your comprehension, your ability

20  to retain what you read.  Work on things that have to do

21  with your AA or that you can begin to assimilate or

22  remember those steps so that you can use those in your

23  day to day decision-making process and can come to a

24  future panel where you can discuss how the, what you

25  have learned, either in your AA or in anger management.

26  Certainly this Panel is not here to offer or to promote

27  **S. MONTENEGRO   H-55090   DECISION PAGE 3   8/16/06**

36

1    one program over another, but any other programs that

2    you do participate in -- that you would be able to come

3    to a Panel and be able to talk to that Panel about what

4    you've learned and how that has made a difference in

5    your decision-making and how that will keep you from

6    committing any types of crimes.  When you do ultimately

7    receive a date -- and as available, that you participate

8    in self-help, and that you continue to earn positive

9    chronos.  And the Panel has recommended that a new

10   psychological report be completed, and that as part of

11   that report that they also review your ability to learn

12   and retain information.  Commissioner, is there anything

13   you would like to add?

14       **DEPUTY COMMISSIONER BLONIEN:**  Yes, you're going to

15   get a copy of this Board decision.  You have one of your

16   friends read it to you.  And you concentrate on what you

17   said to this Panel.  And do a better job.  Good luck.

18       **PRESIDING COMMISSIONER DAVIS:**  All right.  We wish

19   you the best of luck, sir.  We are adjourned.

20                           ---o0o---

21

22

23   **PAROLE DENIED THREE YEARS**

24   **THIS DECISION WILL BE FINAL ON:** December 14, 2006

25   **YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT**

26   **DATE, THE DECISION IS MODIFIED.**

27   **S. MONTENEGRO   H-55090   DECISION PAGE 4   8/16/06**

37

**CERTIFICATE AND**

**DECLARATION OF TRANSCRIBER**


I, Don Larson, a duly designated transcriber, VINE, MCKINNON & HALL, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 - 36, and which recording was duly recorded at CORRECTIONAL TRAINING FACILITY, at SOLEDAD, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of SANTIAGO MONTENEGRO, CDC No. H-55090, on AUGUST 16, 2006, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape(s) to the best of my ability.

I hereby certify that I am a disinterested party in the above-mentioned matter and have no interest in the outcome of the hearing.

Dated NOVEMBER 10, 2006, at Sacramento County, California.



_D.E.Larson_
Don Larson
Transcriber
**VINE, MCKINNON & HALL**