# EXHIBIT 6
# Part 1 of 2

MC-275

Name  Santiago Montenegro

Address P.O. Box 705/ND-12-L

   CTF North Facility

   Soledad,CA.93960-0705

CDC or ID Number  H-55090

**F I L E D**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA

**FEB 2 2 2007**

GARY M. BLAIR, Executive Officer
BY *M.M.Rodriguez*
M.N. RODRIGUEZ, Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA

### IN AND FOR THE COUNTY OF SANTA BARBARA

(Court)

PI36212

PETITION FOR WRIT OF HABEAS CORPUS

Santiago Montenegro

Petitioner

vs.

Ben Curry:et.,al;

Respondent

No. **1226699**

*(To be supplied by the Clerk of the Court)*

### INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60[e]

American LegalNet, Inc.
www.USCourtForms.com

Name  Santiago Montenegro

Address P.O. Box 705/ND-12-L

CTF North Facility

Soledad,CA.93960-0705

CDC or ID Number  H-55090

MC-275

## SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SANTA BARBARA

(Court)

| | |
|---|---|
| Santiago Montenegro | **PETITION FOR WRIT OF HABEAS CORPUS** |
| Petitioner | No. _____ |
| vs. | *(To be supplied by the Clerk of the Court)* |
| Ben Curry:et.,al; | |
| Respondent | |

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

**This petition concerns:**

[ ] A conviction                    [XX] Parole

[ ] A sentence                      [ ] Credits

[ ] Jail or prison conditions       [ ] Prison discipline

[ ] Other (specify): _____

1. Your name:  Santiago Montenegro

2. Where are you incarcerated?  Correctional Training Facility,Soledad, California

3. Why are you in custody?  [XX] Criminal Conviction   [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   Second Degree Murder/With Use Of A Handgun

   Penal Code 187/Penal Code 12022.5

   b. Penal or other code sections:  P.C.187 / P.C. 12022.5

   c. Name and location of sentencing or committing court:  Superior Court County of Santa Barbara

   P.O. Box 21107 Santa Barbara,CA.93101

   d. Case number:  SMO73867

   e. Date convicted or committed:  October 30,1992

   f. Date sentenced:  October 30,1992

   g. Length of sentence:  15 years to life

   h. When do you expect to be released?  Unknown

   i. Were you represented by counsel in the trial court?  [XX] Yes.   [ ] No.  If yes, state the attorney's name and address:

   David Ogren Office of The Public Defender County of Santa Barbrar 3rd Fl.

   Santa Barbara,CA.93101

4. What was the LAST plea you entered? *(check one)*

   [X] Not guilty   [ ] Guilty   [ ] Nolo Contendere   [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [X] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

6.  GROUNDS FOR RELIEF
    **Ground 1:**  State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement."  *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four.  For additional grounds, make copies of page four and number the additional grounds in order.)*

    SEE ATTACHED Petition

    _____

    _____

    _____

    a.  Supporting facts:
        Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who did exactly what to violate your rights at what time (when)* or place *(where).* *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

        SEE ATTACHED PETITION

    _____

    _____

    _____

    _____

    _____

    _____

    _____

    _____

    _____

    _____

    b.  Supporting cases, rules, or other authority (optional):
        *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

        SEE ATTACHED PETITION

    _____

    _____

    _____

7. **Ground 2 or Ground _____** *(if applicable):*

SEE ATTACHED PETITION

a. Supporting facts:

SEE ATTACHED PETITION

b. Supporting cases, rules, or other authority:

SEE ATTACHED PETITION

8. Did you appeal from the conviction, sentence, or commitment?  [X] Yes.  [ ] No.  If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
   Court of Appeal Second Appellate District Division Six

   b. Result: Judgment Affirmed                  c. Date of decision: May 28, 1993

   d. Case number or citation of opinion, if known: B072387

   e. Issues raised: (1)  Counsel filed a statement pursuant to People v. Wende

   (2)         No issues were raised

   (3)

   f. Were you represented by counsel on appeal?  [X] Yes.  [ ] No.  If yes, state the attorney's name and address, if known:

   Gilbert W. Lentz 1114 State Street, Suite 240 Santa Barbara, CA. 93101

9. Did you seek review in the California Supreme Court?  [ ] Yes.  [X] No.  If yes, give the following information:

   a. Result:                                          b. Date of decision:

   c. Case number or citation of opinion, if known:

   d. Issues raised:  (1)

   (2)

   (3)

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

11. Administrative Review:

   a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

   N/A

   b. Did you seek the highest level of administrative review available?  [ ] Yes.  [X] No.
   *Attach documents that show you have exhausted your administrative remedies.*

MC-275 [Rev. January 1, 1999]                 PETITION FOR WRIT OF HABEAS CORPUS                 Page five of six

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?  ☐ Yes. If yes, continue with number 13.  ☒ No. If no, skip to number 15.

13. a. (1) Name of court: _____

    (2) Nature of proceeding (for example, "habeas corpus petition"): _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

    NO Delay

_____

16. Are you presently represented by counsel?  ☐ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court?  ☐ Yes.  ☐ No.  If yes, explain:

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

    This Court has original jurisdiction

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 2 - 9 - 07

_____
(SIGNATURE OF PETITIONER)

1 | Santiago Montenegro,H-55090
P.O. Box 705/ND-12-L
2 | CTF North Facility
Soledad,CA.93960-0705

3

4 | In Propria Persona

5

6

7

8 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | IN AND FOR THE COUNTY OF SANTA BARBARA

10

11 | IN RE: SANTIAGO MONTENEGRO          CASE NO. _____

12 |                                     PETITION FOR WRIT OF HABEAS
          PETITIONER                    CORPUS AND MEMORANDUM OF
13 |                                     POINTS AND AUTHORITIES IN
                                        SUPORT THEREOF.
14 | ON HABEAS CORPUS

15 | _____/

16

17

18

19

20

21 | TO THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

22 | IN AND FOR THE COUNTY OF SANTA BARBARA

23

24

25

26

27

28

1.

1  Santiago Montenegro, H-55090
   P.O. Box 705/ND-12-L
2  CTF North Facility
   Soledad, CA. 93960-0705

3

4  In Propria Persona

5

6

7

8          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9             IN AND FOR THE COUNTY OF SANTA BARBARA

10

11 IN RE: SANTIAGO MONTENEGRO          CASE NO. _____

12                                     PETITION FOR WRIT OF HABEAS
           PETITIONER                  CORPUS AND MEMORANDUM OF
13                                     POINTS AND AUTHORITIES IN
                                       SUPPORT THEREOF.
14 ON HABEAS CORPUS
                                  /
15 _____

16

17                          1.

18            PETITION FOR WRIT OF HABEAS CORPUS

19 TO:  THE HONORABLE JUDGE OF THE SUPERIOR COURT OF THE STATE OF
20      CALIFORNIA IN AND FOR THE COUNTY OF SANTA BARBARA.

21     Comes Now Santiago Montenegro (hereafter petitioner) In Propria

22 persona. Petitioner is unlawfully restrained of his liberty. This

23 petition is intended to give meaning to Santiago Montenegro's sentence

24 of 15 years to life for second degree murder - by seeking to overturn

25 the Board Of Parole Hearings "Illegal And Unconstitutional" decision

26 refusing to grant him parole for the (2nd) time since becoming eligible

27 for parole on January 4, 2003.

28

                          2.

1  Under the parole ststute (penal code section 3041, amended 1976,c.
2  1139), parole is now the norm rather than the exception. (penal code
3  section 3041 (a), the board "shall." normally set a parole release date
4  at the initial hearing". A life prisoner must have a release date set
5  when his release would not pose a danger to the public. (penal code
6  section 3041 (b). That determination must be based on criteria set
7  forth in the Penal Code. The Board is given latitude to formulate
8  criteria implementing the statutory mandate. (Penal Code Section
9  5076.2). However, this criteria is limited to the parameters estab-
10  lished by statute and legislative intent. (Terhune v. Superior Court,
11  65 cal. App. 4th 864, 872-873 (1998).

12      In the case of this petitioner, there is "No Evidence" in the
13  record to support the Board's denial of parole at his (2nd) parole
14  hearing. The court is asked to issue a formal "Order To Show Cause"
15  and require the respondent to present to the court justification for
16  the Board's decision in this case. The court is asked to find the
17  decision violated due process of law and order the Board to set
18  this petitioner's parole release date. The court is also asked to
19  declare the rights of the parties under the Due Process and Equal
20  Protection Clauses, in regards to the Board's interpretation of
21  Section 3041, Penal Code, and to issue habeas relief accordingly.

22      Generally, Petitioner asserts that he is being subjected to an
23  unconstitutional condition in the determination of his parole appli-
24  cations because the Board of Parole Hearings has been operating out-
25  side the law pursuant to a policy against granting paroles, such that
26  the parole statute has been and currently is misinterpreted to the
27  extent that petitioner has been deprived all substantive due process
28  protections of the law including his federally protected liberty in-

1  terest to parole. Petitioner asserts, within this context, that the

2  Board has been found to be operating pursuant to a "No" parole policy

3  which reduces parole hearings to pro forma sham hearings where parole

4  commissioners are precluded by this policy (and their own abiding an-

5  imus) from being fair or impartial, which violates substantive due

6  process of law.

7

8  11.

9  PARTIES

10  PETITIONER, SANTIAGO MONTENEGRO, CDC#B-55090 is a prisoner of the

11  State of California, incarcerated at the Correctional Training Facility

12  Soledad,California.

13  RESPONDENT, BEN CURRY, is the Warden of the Correctional Train-

14  ing Facility Soledad,California and is the legal custodian of the

15  petitioner

16

17  111.

18  STATEMENT OF THE CASE

19  Preliminary formalities (HT 1). 1/ (Exhibit 1, transcript of

20  parole hearing conducted on August 16, 2006).

21  Santiago Montenegro (hereafter petitioner) was recieved by the

22  California Department of Corrections & Rehabilitations (CDCR) 11/06/92

23  from Santa Barbara County for the offense of murder 2nd with use of a

24  firearm. He is sentenced to an indeterminate term of 17 years to life.

25  Case number SM073867. His Minimum Eligible Parole Date (MEPD) is set

26  for February 3, 2003.

27  _____

1. References to the parole hearing trancripts will be indicated by
28  HT followed by page number, i.e, (HT 0).

4.

## COMMITMENT OFFENSE

The following are statements taken from the petitioner's probation officer report dated October 21,1992. (See Exhibit 2 at p.2-3).

On November 13, 1985, Santa Maria Police Officers responded to El Conquistador Bar, 210 S. Blosser, Santa Maria, to investigate a shooting. Officers found Antonio Hernandez Cardona, age 22, slumped in the right front passenger seat of an automobile. Officers observed a gun shot wound in the front of his neck, an ambulance was called and he was taken to Marian Medical Center where he died at 2315 hours. Doctors concluded the victim dided as a result of a gun shot wound to the anterior neck/chest, exiting through the back. A second entry wound in the left shoulder revealed a .44 caliber bullet. The victim was shot three times.

Investigation revealed the victim was the alleged boyfriend of Liliana Beltran, and they had been inside the El Conquistador Bar. Ms. Beltran left the bar and went outside to the victim's car. The defendant followed Ms. Beltran out to the car, sat down in the car and tried to kiss her. The victim came out of the bar with two friends, saw what was going on and pulled the defendant out of the car. The victim and defendant verbally argued, the defendant pulled a .44 magnum pistol from his waistband, and fired three or four shots, killing the victim. The defendant fled the area.

The defendant told officers upon his arrest, he had hidden in a cardboard box in an alley until day light, had been in Reedley, California, Tijuana, Mexico and for the past two years had been living in Guadalupe.

5.

## BOARD FINDINGS

In the matter of Santiago Montenegro, CDC number H-55090. The panel reviewed all the information received from the public and relied on the following circumstances in concluding that the prisoner is not suitable for parole and would pose an unreasonable risk to society or a threat to public safety if released from prison.

The offense was carried out in an especially callous manner, and the motive for the offense was very trivial in relation to the offense.

## MENTAL HEALTH EVALUATION

The psychological report by Dr. William Gamard, Ph.D is supportive of parole pursuant to Penal Code Section 5079. (see Exhibit 3 at pp.4-6).

## CURRENT DIAGNOSTIC IMPRESSIONS:

Axis I:     No contributory.

Axis II:    No contributory.

Axis III.   No contributory.

Axis IV:    Incarceration.

Axis V:     GAF equals 85.

Should this inmate at this time be given a parole or release date his prognosis for maintaining his present gains in the community is excellent.

## ASSESSMENT OF DANGEROUSNESS:

A.  This inmate has not received any CDC-115 violations for violent behavior during his entire incarceration of 16 years. He only had one CDC-115, whis was on March 6, 2002 for refusing to work. Therefore, it is felt that he would pose a less than average risk for violence when compared with this Level Two inmate population.

6.

B.  If released to the community his violence potential is
    estimated to be no higher than the average citizen in
    the community.  This based upon the following consider-
    ations:  there is no evidence of any previous violent
    behavior,  or violent behavior since his offense. There
    was no history of prior arrest other than one DUI.  Al-
    though he did flee the scene of the crime,  evaded arrest
    for six years, and formerly appeared to lack remorse for
    his crime, he has since accepted full responsibility for
    his offense.

CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS:

A.  This inmate is responsible for his behavior.  He has the
    ability to abide by institutional standards and has done
    so during his incarceration period.

B.  This inmate has no mental health disorder, which would
    necessitate treatment either during his incarceration
    period or following parole.

C.  Since this inmate denies having any alcohol or drug
    problem, no recommendations are made in this area.

IV.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

Petitioner filed this petition in the superior Court in the first

instance in asmuch as the Board of Parole Hearings no longer provides

for administrative appeals.

V.

VERIFICATION

I am the petitioner in this action. All facts in the above doc-

uments, not otherwise supported by citation to the record, exhibits, of

other documents, are true of my own personal knowledge. I declare

under penalty of perjury that the foregoing is true and correct and

that this declaration was executed on this date 7-9-07 , at the

Correctional Training Facility at Soledad, California.

Santiago Montenegro

7.

# VII.

## CRITERIA FOR PAROLE

The "unreasonable risk" requirement is the standard required by statute (3041,subd,[b]), and by the Board regulations in order to justify a denial of parole. (CCR 15. 2402,subd [a]), Section 3041,(a), Penal Code requires, in pertinent part:

One year prior to the inmates minimum eligible parole date a panel consisting of at least two commissioners of the Board Of Parole Hearings shall again meet with the inmate and normally set a parole release date as provided in section 3041.5. The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to public.... Subd. [b] of section 3041 provides in pertinent part, that: the panel or board shall set a release date unless it dteermines that the gravity of the current convicted offense or offenses, is such that consideration of public safety requires a more lengthy period of incarceration of this individual, and that a parole date, therefore, cannot be fixed at this meeting.

## TITLE 15, DIVISION 2, BOARD REGULATIONS

## 2402. DETERMINATION OF SUITABILITY.

(a) General. The panel shall first determin whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison. (emphasis added).

(b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before and after the crime; past and present attitude toward the crime; any conditions of treatment or controle, including the use of special conditions under which the prisoner may safely be releaseed to the community;

8.

and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

(c) Circumstances Tending To Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as guidelines; the importance attached to any circumstances or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitabiliyt include:

(1) Commitment Offense: The prisoner committed the offense in an especially heinous, atrocious or cruel manner. the factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.

(B) The offense was carried out in a dispassionate and calculated manner such as an execution-style murder.

(C) The victim was abused, defiled or mutilated during or after the offense.

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record Of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unsuitable Social History. The prisoner has a history of unsutable or tumultous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(d) Circumstances Tending To Show Suitability. The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstances or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

(1) No Juenile Record. The prisoner does not have a record assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs Of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation For Crime. The prisoner commited his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Sydrome. (Not quoted here as inapplicable).

(6) Lack Of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be be put to use upon release.

(9) Institutional Behavior. Institutional activities and enhanced ability to function within the law upon release.

VIII.

PRAYER FOR RELIEF

Santiago Montenegro states that he has no other plain or speedy remedy save habeas corpus: therefore, he prays this Honorable Court:

1. Issue an order to show cause;

2. Appoint counsel to represent petitioner in any and all proceedings in this matter.

3. Conduct an evidentiary hearing;

4. Order respondents to provide petitioner with reasonable discovery;

5. Declare the rights of the petitioner;

6. Grant any other further relief the court deems proper and just.

Date: 2-9-07                    Respectfully, submitted

_____
Santiago Montenegro

IX.

MEMORANDUM OF POINTS AND AUTHORITIES

THE LAW ON PAROLE

Penal Code section 3041, subdivision (a) requires that at a suitability hearing the board "shall normally set a parole release date...Subdivision (b) provides that a release date "shall" be set "unless" the Board determins that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of public safety requires a more lengthy period of incarceration for this ind- ividual...See, e.g, In re Rosenkrantz, 29 Cal.App. 4th 616, at 653, (2002), citing to In re Ramirez, 94 Cal. App. 4th 549, at 565. The parole board regulations make this criterion more specific. The panel can deny only if the prisoner would pose an unreasonable risk of da- nger to society if released from prison. (Cal. Code Regs., tit 15, 2402, subd (a). The regulations set forth specific criteria to deter- mine whether under the standard a prisoner is suitable for parole.

Under the rule created by the United States Supreme court in Greenholtz v. Inmates of Nebraska Penal (1979) 442 U.S. 1,12, and Board of Pardons v. Allen (1987) 482 U.S. 369, 377-378, a state's statutory parole scheme which used mandatory language "creates a pre- sumption that parole will be granted" when or unless certain designa- ted findings are made, and therefore gives rise to a constitutional liberty interest. The California parole scheme uses mandatory language which is parallel to the parole scheme found in Greenholtz and Allen

12.

1 to give rise to a protected liberty interest in parole. Accordingly,

2 the California parole scheme gives rise to a cognizable liberty in-

3 terest in release on parole. See also, McQuillion v. Duncan, 306 F.3d

4 895, 902 (9th Cir. Cal.2002); and Biggs v. Terhune, 334 F.3d 910

5 (9th Cir. Cal. 2003), affirming these propositions in California's

6 section 3041, penal code. Following on the heels of McQuillion, supra,

7 the siminal case of In er Rosenkrantz held that the satutory parole

8 scheme creats a liberty interest under California due process of law.

9 Id., at 29 Cal. 4th at 668, fn.12. The court then applied the clearly

10 established federal due process test to review a gubernatorial dec-

11 ision to deny parole. It recognized that a gubernatorial decision is

12 subject to judicial review to determine whether there is "some evid-

13 ence" to support the decision. In this case, the decision by the Board

14 to find petitioner unsuitable for parole is also subject to review to

15 determine if there is some evidence to support the decision, the ev-

16 idence must bear some indicis of reliability. Cato v. Rushen, 824 F.

17 2d 703, 705 (9th Cir. Cal. 1987); also, Jancsek v. Oregon Board of

18 Parole. 833 F. 2d 1389, 1390. (9th Cir. 1987). The evidence must be

19 relevant and material to the decision. (Cal. Code Regs., 15. 2000 (b)

20 (50) Good Cause; (63) Material Evidence, (90) Relevant Evidence (Ibid.

21 (50) Good Cause: A finding by the board based upon a preponderance of

22 the evidence that there is a factual basis and good reason for the

23 decision made. Evidence which tends to prove or disprove an issue or

24 facts in dispute.In re Caswell, 92 Cal. App. 4th 1017, 1030;McQuillion

25 supra; 306F.3d at 906,910.

26

27   A.   THE DECISION TO FIND PETITIONER UNSUITABLE FOR
         PAROLE IS AN ABUSE OF DISCRETION AND VIOLATES DUE
         PROCESS; PETITIONER MUST BE GRANTED A PAROLE DATE.

28

1     1.   THE DECISION IS NOT SUPPORTED BY ANY RELEVANT OR
           MATERIAL EVIDENCE.
2

3     Proceeding under the presumption that the evidence must be rel-

4  evant and material, there was no relevant or material evidence to ba-

5  se denial of parole to petitioner. Under federal due process analysis,

6  after finding a liberty interest, it must be determined what process

7  is due. Morrissey v. Brewer (1972) 408 U.S. 471,481. In this context,

8  the United States Supreme Court has held that there must be "some ev-

9  idence" Superintendent v. Hill (1985) 472 U.S. 445,456, where it sta-

10 tes that "the fundamental fairness guarnteed by the due process clause

11 does not require courts to set aside decisions of prison administra-

12 tors that have some basic fact."

13    Additionally, the evidence underlying the Board's decision must

14 have some indicia of reliability. Jancsek, supra 833 F. 2d at 1390.

15 In this case, petitioner contends that the Board of Parole Hearings

16 erroneously concluded there is some evidence to justify the finding

17 that he is suitable for parole.

18

19    (a).  THE COMMITMENT OFFENSE DOES NOT CONSTITUTE "SOME
            EVIDENCE" FOR DENIAL OF PAROLE IN THIS CASE.
20

21    In finding petitioner unsuitable for parole the panel stated

22 that the commitment offense was carried out in an especially vicious

23 and brutal manner. Additionally, the motive of this crime was inexpl-

24 icable and trivial in relationship to the offense. Moreover, the off-

25 ense was carried out in a manner which demonstrates exceptional insen-

26 sitive disregard for human suffering. Such a finding is contrary to the

27 facts of the case, where the record indicates petitioner would pose a

28

                                14.

1   low degree of risk to society if he were released from prison at this
2   time. It could be argued that any and all murders are carried out in
3   a vicious, brutal manner without regard to human suffering. and in
4   fact is what second degree murder is. But used as a regulation for
5   unsuitability would have to denote something greater than an ordinary
6   or typical killing. Nonetheless, as the psychological evaluation re-
7   port clearly demonstrates, petitioner has made substantial and signif-
8   icant progress in growth and maturation while incarcerated. The record
9   is replete with his achieving the correctional objectives of reforming
10  his life, and it would be a disservice to the professionalism and pro-
11  grams of the Department to devalue petitioner's officially-recognized
12  progress and deny him parole because he committed the offense. Despite
13  this offense, he was sentenced to a parolable sentence. Certainly, his
14  case falls within the meaning expressed in Ramirez, supra, that any
15  murder is parolable under the statute. Yet, the panel made no effort
16  to distinguish his offense as containing circumstances which are be-
17  yond the minimum necessary to sustain a conviction for the crime of
18  second degree murder.

19
20      2.   THE BOARD"S BOILERPLATE RELIANCE ON STATIC HISTORY
             FACOTORS VIOLATES FUNDAMENTAL DUE PROCESS.
21
22      The Ninth Circuit has expressed concern about the use of the
23  commitment offense to repeatedly deny parole. As the circuit in Biggs
    v. Terhune (9th Cir. 2003) 334 F. 3d 910,916, recently acknowledge:
24
    "Due process is not a mechanical instrument. It is a process. It is
25
    a delicate process of adjustment inescapably involving the exercise of
26
    judgment by those whom the constitution has entrusted with the unfold-
27
    ing of the process."Lankford v. Idaho 500 U.S. 110,121 (1991 (quoting
28

15.

1   <u>Joint Anti-Fascist Refugee Comm. v.McGrath</u>,341 U.S. 123, 163 (1951)

2   (Frankfuter, J., Concurring). A continued reliance in the future on an

3   unchanging factor, the circumstances of the crime... runs contrary to

4   the rehabilitative goals espoused by the prison system and could re-

5   sult in a due process violation. See also, In re <u>Rosenkrantz</u>, supra,

6   29 Cal. 4th at 689 (Moreno, J., concurring). (Emphasis added).Biggs

7   was denied at his first initial parole hearing. The Circuit allowed

8   that the commitment offense could be used at that initial hearing as

9   a legitimate cause for denial of parole, but questioned whether it

10  could be used as a factor to continue denying parole at subsequent

11  hearings. At first blush, the use of the offense in the petitioner's

12  case at his initial hearing might have been upheld as "some evidence".

13  but the hearing challenged here is his (2nd) subsequent hearing. The

14  <u>Biggs</u> court gave clear indication that had it been Biggs subsequent

15  hearing, the court may have found against the Board on using the off-

16  ense to again base parole denial on.

17        When considering the offense as circumstances for unsuitability

18  the Board must be and should be mindful that the circumstances of the

19  offense are static and unchangeable. The most important aspect of this

20  case is the dynamic changes that years of imprisonment and exposuer to

21  positive, behavioral programs has made in this petitioner. The record

22  shows that he has achieved the objective of corrections, i.e., to co-

23  rrect behavior, and the record shows official and professional recog-

24  nition that he does not pose an unreasonable risk to public safety if

25  paroled. Thus, since there is no evidence whatsoever of unreasonable

26  risk, which is the standard by which the Board's decision legally hi-

27  nges, the Board's decision denying petitioner parole must be reversed.

28  <u>The statutory default must be enforced in this case.</u>

16.

3.    THE BOARD'S STATEMENT OF REASON WAS INADEQUATE.

The Board's statement of reasons were inadequate and inappropriate. In In re Strum (1974) 11 Cal. 3d 258, 113 Cal. Rptr. 361, 521. P. 2d 97. The California Supreme Court held that in order to comply with a prisoner's due process rights, the Board must "support all its denials of parole with a written definitive statement of its reasons therefore and to communicate such statements to the inmate concerned". (Id., at P. 273.) The Strum court articulated three rationales as to why the Board must provide a written statement of reasons granting parole: (1) to promote carefule decision making; (2) to allow inmates to make an informed application for relief if parole is denied; and (3) to permit meaningful judicial review. (Id., at P. 270.) Other courts have taken similar positions where judges have failed to adequately articulate their findings. See People v. Martin (1986) 42 Cal. 3d 905, 913-915, and cases cited. In Martin the court said, citing several cases, such as In re Podesto (1976) 15 Cal. 3d 921, that

"we emphasized that a requirement of articulated reasons to support a given decision serves a number of interests; it is frequently essential to meaningful review; it acts as an inherent guard against careless decisions, insuring that the judge himself analyzes the problem and recognizes the grounds for his decision-making process by helping to persuade the parties and the public that the decision-making is careful, reasoned and equitable". (Ibid.)

Here, the Board's statement of reasons is crtptic at best. It merely recites the commitment offense as the primary basis upon which it denied parole and list pro forma boilerplate terminology from its Parole Denial Worksheet/Fm. 1000A. It dose not explain what it is about the commitment offense and its inclusive aggravvting circumstances that make the petitioner an "unreasonable risk of danger to society if

17.

released". (see section 2402, subd. (a).) or how the commitment offe-
nse was "particularly egergious.". It did not explain how all the evi-
dence supporting petitioner's suitability for parole, including all
the psychological clearances, and lack of any violent criminal history
did not outweigh under the ordinary rules of the "perponderance of
evidence" standard employed by the Board's regulations (see section
2000 (b), (50) - the static history of the commitment offense. There-
fore, the Board's abused its discretion in violation of procedural due
process by failing to properly apply its own burden of proof.

The Court is not here asked to substitute its judgment for that
of the Board, nor is it asked to weigh or reweigh the evidence. Rather,
the court is asked to review de novo the pre-decisional process of the
hearing, including the evidence submitted, determined the <u>legal sign-
icance</u> of that evidence as relevant or irrelevant, and then determine
if the Board met its own standard of proof in weighing and balancing
process.

4. THE DECISION TO DENY PETITIONER PAROLE WAS ARBITRARY
AND AN ABUSE OF DISCRETION, UNSUPPORTED BY "SOME EVID-
ENCE,"VIOLATING HIS RIGHT TO DUE PROCESS GUARANTEED
BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTIT-
UTION OF THE UNITED STATES.

---

Although the Board of Parole Hearings (hereafter Board) discret-
ion in parole matters has been described as "broad", it is not absol-
ute (<u>In re Powell</u> (1988) 45 Cal. 3d 894, 940), as its discretion is
"cabined" by criteria, in petitioner's case, listed in the California
Code of Regulations, title 15 § 2402 <u>McQuillion v. Duncan</u> (9th Cir.
2003) 306 F. 3d 895, 912). Petitioner has not only a liberty interest
in parole (<u>In re Rosenkrantz</u> (2002) 29 Cal. 4th 616, 652) but an ex-
pectation that [he] will be granted parole unless the Board finds in

18.

1  the exercise of its discretion that [the prisoner is] unsuitable <u>for</u>
2  <u>parole in light of the circumstances specified by statute and by the</u>
3  <u>regulations</u> (<u>Ibid</u>. at 654, emphasis added). Petitioner's liberty inter-
4  est in and "expectation" of parole, does not attach upon being found
5  suitable for parole , but upon entrance of prison gates (<u>Biggs v. Ter-</u>
6  <u>hune</u> (9th) Cir. 2003) 334 F. 3d 910,915). A decision of unsuitability
7  for parole must be supported by some evidence having some indicia of
8  reliability (<u>Ibid</u>., Citation). There must also be a rational connection
9  between the evidence and the decision made; if not the decision is ar-
10 bitrary and an abuse of discretion, violating the due process clause
11 (<u>Guidotti v. County of Yolo</u> (1989) 214 Cal. App. 3d 1552,1561; <u>Oregon</u>
12 <u>Resource Council v. Lowe</u> (9th Cir. 1997) 109 F. 3d 521,526).

13      As will be demonstrated, the decision to deny petitioner parole
14 for the 2nd time, is not supported by "some evidence" and is therefore
15 an abuse of discretion, violating his right to due process. (<u>Rosenkran</u>
16 <u>tz v. Marshall</u>, 444 F. Supp. 2d 1063. C.C Cal. (2006) U.S. Dist. Lexis
17 79358; (<u>Martin v. Marshall</u>, 431 F. Supp. 2d 1038 (N.D. Cal. 2006).
18 Petitioner's case is exactly what Biggs envision when it stated that
19 repeated refusals to grant a parole release date to an inmate with an
20 exemplary post-conviction record may violate the prisoner's due proc-
21 ess rights Biggs, 334 F.3d at 916. The record in this case is replete
22 with evidence of petitioner's remorse and rehabilitation, including
23 glowingly positive psychological reports. (see petitioner's exhibit 3
24 at pp. 4-6). As detailed above, every psychologist and correctional
25 counselor who has evaluated petitioner has concluded that petitioner
26 would pose no significant risk of danger if released. Regardless of
27 whether the BPH's ever was entitled to rely upon the commitment off-
28 ense to find that petitioner posed an unreasonable risk of danger and

1  was unsuitable for parole , in the exceptional circumstances presented

2  by this case, the BPH's continued reliance on the commitment offense

3  violates due process because it resulted in an arbitrary decision and

4  because the facts surrounding the offense do not now constitute "some

5  evidence" possing "some indicia of reliability" that petitioner pose

6  a danger to the community. See Hill; 472 U.S. at 455; Biggs, 334 F. at

7  917; Irons, 358 F. Supp. 2d at947; Masoner v. State, 2004 U.S. Dist.

8  Lexis 9221,2004 WL 1080177, at *1-2 (C.D.Cal. 2004).

9

10                              ARGUMENTS

11      a.   THE COMMITMENT OFFENSE FOR THE SECOND TIME IS NOT
12           "SOME EVIDENCE" UPON WHICH PAROLE CAN BE DENIED.

13      Petitioner's second parole hearing was held on August 16, 2006.

14  Presiding Commissioner, James Davis states: This hearing is being co-

15  ducted pursuant to Penal Code Section 3041 and 3042 and the rules and

16  regulations of the Board of Prison Terms governing parole considera-

17  tion hearings for life inmates. (HT 7). In closing the commissioner

18  concluded there were Two reasons why this petitioner is not suitable

19  for parole and would pose would pose an unreasonable risk to society

20  or a threat to public safety if released from prison. (1). The offense

21  was carried out in an especially callous manner, and (2). The motive

22  for the offense was very trivial in relation to the offense. (HT 33).

23      The relevant evidence does not merely fail to support but re-

24  futes the conclusion that the petitioner committed his offense in a

25  especially callous maner.

26

27      b.   THE MANNER IN WHICH PETITIONER COMMITTED HIS OFFENSE
28           DOES NOT DEMONSTRATE AN ESPECIALLY CALLOUS MANNER

1   "[A]ll second degree murders by definition involve some callousness--

2   i.e., lack of emotion or sympthy, emotional insensitivity, indiffer-

3   ence to feelings and suffering of others. [Citation.] As noted, how-

4   ever, parole is the rule, rather than the exception, and a conviction

5   for second degree murder does not automaticly render one unsuitable."

6   (In re Smith (2003) 114 Cal. App. 4th 343, 366 [7 Cal. Rptr. 3d 655],

7   italics omitted.) In re Ramirez, supra, 94 Cal. App. 4th 549, as in

8   this case, the Board denied a parole release date on the basis of a

9   finding that the nature of the inmates offense displayed a "callous

10  disregard for human suffering." (Id. at pp. 558, 568.) Setting aside

11  that determination, the court agreed that "the gravity of the commi-

12  tment offense or offenses alone may be a sufficient basis for denying

13  a parole application, so long as the Board does not fail to consider

14  all other relevent factors," (id. at p. 569), but attached an impor-

15  tant caveat. As the court explained, "[a]ll violent crime demonstrates

16  the perpetrator's potential for posing a grave risk to public safety,

17  yet parole is mandatory for violent felons serving determinate senten-

18  ces. (Pen. Code, § 3000, subd. (b) (1).

19       Under the Board regulations, base terms for life prisoners are

20  not calculated until after an inmate is deemed suitable for release.

21  (§ 2282, subd. (a).) The regulations therefore contemplate that an

22  inmate may be deemed suitable for release even though his offense

23  demonstrated "exceptionally callous disregard for human suffering."

24  (§ 2402, subd. (c) (1) (D).)

25       Because the relevant evidence shows no more callous disregard

26  for human suffering than is shown by most second degree murder off-

27  enses, the Board's use of this factor to conclude that petitioner

28  committed his offense "in an especially cruel and callous manner" was

21.

1  arbitrary and capricious. Examined in light of the record, the Board's

2  explanation of why petitioner is not suitable for release from prison

3  is revealed as no more than the mouthing of conclusionary words. The

4  reliable factual underpinning that is constitutionally required cannot

5  be shown (see McQuillion v. Duncan (9th Cir. 2002) 306 F. 3d 895,902;

6  In re Caswell (2001) 92Cal. App. 4th 1017,1027, [112 Cal. Rptr. 2d 462]

7  even under the exceptional deferential standard of review.

8      This is petitioner's second suitability hearing in which the

9  board relied upon unchanging factors to deny petitioner a parole date.

10 The Ninth Circuit has held that California's parole scheme creates a

11 cognizable liberty interest in release on parole because Penal Code §

12 3041 uses mandatory language and is similar to the Nebraska and Montana

13 statutes addressed in Greenholtz and Allen, respectively. McQuillion,

14 306 F.3d at 901-902. As the Ninth Circuit has explained, "Section 3041

15 of the California Penal Code creates in every inmate a cognizable lib-

16 erty interest in parole which is protected by the procedural safeguards

17 of the Due Process Clause, and that interest arises upon the incarcer-

18 ation of the inmate. Biggs v. Terhune, 334 F.3d 910, 914-915 (9th Cir.

19 2003). Petitioner has now served 15 years on his sentence, under these

20 circumstances, the nature of the offense has lost any predictive value

21 and continued reliance on it to find petitioner unsuitable violated

22 due process. (Bair v. Folsom State Prison 2005 U.S. Dist. Lexis 29952

23 (E.D. Cal. 2005). The Biggs Court held, in relevant part:

24

25      [The] parole board's sole supportable reliance on the
        gravity of the offense and conduct prior to imprisonment
26      to justify denial of parole can be initially justified
        as fulfilling the requirements set forth by the state.
27      Over time, however, should Biggs continue to demonstrate
        exemplary behavior and evidence of rehabilitation, denying
28      him a parole date simply because of the nature of Biggs
        offense and prior conduct would raise serious questions

1  involving his liberty interest in parole. A continued re-
   liance in the future on unchanging factor, the circumstances
2  of the offense and conduct prior to imprisonment runs cont-
   rary to the rehabilitative goals espoused by the prison sys-
3  tem. (Biggs v. Terhune, supra, 334 F.3d at 916-917).

4

5                            CONCLUSION

6

7      When the court applies the some evidence standard as properly

   understood to the circumstances of Santiago Montenegro, the court will
8
   find that the Board's decision was not based on some relevant reliable
9
   evidence that reasonably suggest that he poses a current, unreasonable
10
   threat to public safety. For these reasons, the petitioner respect-
11
   fully request that this court vacate the Board's determination of un-
12
   suitability and direct the Board to set a parole date for the Petitio-
13
   ner,
14

15

16

17

18  Date: 2- 9- 07                              _____
19                                             Santiago Montenegro

20

21

22

23

24

25

26

27

28

                                    23.

DECLARATION OF SANTIAGO MONTENEGRO

     I declare as follows:

I am the petitioner in this case. I am over the age of eighteen years.
I am a party to the attached action. I am a resident of the Correct-
ional Training Facility in Soledad, California. My address is Post
Office Box 705/ND-12-L / CTF North Facility / Soledad,California.93960-
0705. I served the attached document entitled "Writ Of Habeas Corpus"
on the persons/parties specified below by placing a true copy of said
document into a sealed envelope with the appropriate postage affixed
thereto and surrendering said envelope to the following:

OFFICE OF THE ATTORNEY GENERAL
300 South SPRING STREET
LOS ANGELES,CA. 90013

     I declare under penalty of purjury under the laws of the United
States that the foregoing is true and correct. Executed this _27th_
day of _FEBRUARY_. 2007 at the Correctional Training Facility
in Soledad, California.

                                        _____
                                                Declarant

# EXHIBIT 1

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

In the matter of the Life    )
Term Parole Consideration    )    CDC Number H-55090
Hearing of:                  )
                             )
SANTIAGO MONTENEGRO          )
_____)

CORRECTIONAL TRAINING FACILITY

SOLEDAD, CALIFORNIA

AUGUST 16, 2006

PANEL PRESENT:

JAMES DAVIS, Presiding Commissioner
NOREEN BLONIEN, Deputy Commissioner

OTHERS PRESENT:

SANTIAGO MONTENEGRO, Inmate
PATRICK SPARKS, Attorney for Inmate
LYNN CUTLER, Prosecutor
JOSE ZAVALA, Spanish Interpreter
ED MARTINEZ, Commissioner/Observer
Two Correctional Officers, Unidentified

INMATE
COPY

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____  No        See Review of Hearing
_____  Yes       Transcript Memorandum

Don Larson -- Vine, McKinnon & Hall

ii

## INDEX

|  | Page |
|---|---|
| Proceedings | 1 |
| Case Factors | 7 |
| Pre-Commitment Factors | 12 |
| Post-Commitment Factors | 17 |
| Parole Plans | 25 |
| Closing Statements | 30 |
| Recess | 32 |
| Decision | 33 |
| Adjournment | 36 |
| Transcriber Certification | 37 |

--oOo--

1

1         P R O C E E D I N G S

2         PRESIDING COMMISSIONER DAVIS:  This is a Subsequent

3    Parole Consideration Hearing for Santiago Montenegro,

4    CDC number H-55090.  And before we get started, we do

5    have an interpreter with us today, so I will go ahead

6    and swear you in, sir.  Raise your right hand, do you

7    solemnly swear to translate from English to Spanish and

8    from Spanish to English to the best of your ability

9    accurately?

10        INTERPRETER ZAVALA:  I do.

11        PRESIDING COMMISSIONER DAVIS:  Thank you.  Today's

12   date is August 16th, 2006.  We're located at the

13   Correctional Training Facility in Soledad.  The inmate

14   was received on November 6th, 1992, from Santa Barbara

15   County, the life term beginning on January 23rd, 1993,

16   with a minimum eligible parole date of January 24th,

17   2003.  The controlling offense for which the inmate has

18   been committed is murder second with a weapon, case

19   number SN073860 -- 867, excuse me, better repeat that,

20   SN073867 -- count 1, Penal Code Section 187 second slash

21   12022.5 paren (a).  The inmate received a term of 15

22   years to life plus two.  This hearing is being tape

23   recorded, and for the purposes of voice identification,

24   we will each state our first and last name, spelling the

25   last name, and when it reaches you, Mr. Montenegro, if

26   you also will give us your CDC number, please, sir.  So

27   I will start and move to my left, I'm James Davis,

2

1    D-A-V-I-S, Commissioner.

2        DEPUTY COMMISSIONER BLONIEN:  I'm Noreen Blonien,

3    B-L-O-N-I-E-N.  I'm a Deputy Commissioner.

4        ATTORNEY CUTLER:  I'm Lynn Cutler, C-U-T-L-E-R.  I'm

5    the prosecutor.

6        ATTORNEY SPARKS:  Patrick Sparks, S-P-A-R-K-S,

7    attorney for Mr. Montenegro.

8        INMATE MONTENEGRO:  Santiago Montenegro, S, S, S ...

9        PRESIDING COMMISSIONER DAVIS:  Just your last name

10   for spelling.

11       INMATE MONTENEGRO:  Montenegro, M-O-N-T-E-N-E-G-R-O,

12   H-5590 (verbatim).

13       INTERPRETER ZAVALA:  Jose Zavala, Z-A-V-A-L-A,

14   Spanish interpreter.

15       COMMISSIONER MARTINEZ:  Ed Martinez, M-A-R-T-I-N-E-Z

16   Commissioner/Observer.

17       PRESIDING COMMISSIONER DAVIS:  We want the record

18   also to reflect we're joined by two correctional

19   officers here today, who will not be joining us, for

20   security purposes only, and will not be actively

21   participating in this hearing.  Mr. Zavala, if you will

22   read this Americans with Disabilities Act statement,

23   please, in Spanish.

24       INTERPRETER ZAVALA:  [ADA statement read in

25   Spanish.]

26       PRESIDING COMMISSIONER DAVIS:  According to our

27   records, on February 14th, 2006, together with staff in

3

1    the institution, you reviewed and signed a BPT Form

2    1073, indicating that you do not have any disabilities

3    that would qualify under the Americans with Disabilities

4    Act; however, you do need a Spanish interpreter, which

5    of course, is why Mr. Zavala is here today.  Has

6    anything changed since that time, sir?

7         INMATE MONTENEGRO TRHOUGH INTERPRETER:  No.

8         PRESIDING COMMISSIONER DAVIS:  All right, very well.

9    And did you have an interpreter with you when you

10   reviewed your C-File?

11        INMATE MONTENEGRO TRHOUGH INTERPRETER:  Yes.

12        PRESIDING COMMISSIONER DAVIS:  All right.  And for

13   the psychological examination, which you took in 2002?

14        INMATE MONTENEGRO TRHOUGH INTERPRETER:  Yes.

15        PRESIDING COMMISSIONER DAVIS:  All right, very well.

16   You're able to hear us all right?

17        INMATE MONTENEGRO TRHOUGH INTERPRETER:  Yes.

18        PRESIDING COMMISSIONER DAVIS:  And you made it here

19   today under your own power?  You're able to walk here?

20        INMATE MONTENEGRO TRHOUGH INTERPRETER:  Yes.

21        PRESIDING COMMISSIONER DAVIS:  All right.  Is there

22   any reason that you can think of why you would not be

23   able to actively participate in this hearing today?

24        INMATE MONTENEGRO TRHOUGH INTERPRETER:  Excuse me?

25        PRESIDING COMMISSIONER DAVIS:  Is there any

26   reason -- anything that you can think of that would

27   preclude you from actively participating in this hearing

4

1    today?

2         INMATE MONTENEGRO TRHOUGH INTERPRETER:   No.

3         PRESIDING COMMISSIONER DAVIS:  All right, very well.

4    Counsel, you're satisfied with that as well?

5         ATTORNEY SPARKS:  Yes.

6         PRESIDING COMMISSIONER DAVIS:  All right.   Thank

7    you.   This hearing is being conducted pursuant to Penal

8    Code sections 3041 and 3042 and the rules and

9    regulations of the Board of Prison Terms governing

10   parole consideration hearings for life inmates.   The

11   purpose of today's hearing is to once again consider the

12   number and nature of the crimes for which you were

13   committed, your prior criminal and social history, and

14   your behavior and programming since your commitment.

15   We've had the opportunity today to review your Central

16   File and your prior transcript, and you will be given

17   the opportunity to clarify the record as we proceed.  We

18   will reach a decision today and inform you of whether or

19   not we find you suitable for parole and the reasons for

20   our decision.   If you are found suitable for parole, the

21   length of your confinement will be explained to you.

22   Nothing that happens here today will change the findings

23   of the court.  The Panel is not here to retry your case,

24   the Panel is here for the sole purpose of determining

25   your suitability for parole.   Do you understand that,

26   sir?

27        INMATE MONTENEGRO TRHOUGH INTERPRETER:   Yes.

5

1       **PRESIDING COMMISSIONER DAVIS:**  Thank you.  This
2       hearing will be conducted in basically two phases, first
3       I will discuss with you the crime for which you were
4       committed, as well as your prior criminal and social
5       history; and Commissioner Blonien will then discuss with
6       you your progress since your commitment, your
7       counselor's report, psychological evaluation, parole
8       plans, and any literature of support or opposition as
9       they may exist.  Once that is concluded, the
10      prisoners -- the Commissioners, excuse me -- and the
11      District Attorney, and your attorney will have an
12      opportunity to ask you questions.  Questions that come
13      from the District Attorney will be asked through the
14      Chair, and you will respond back to the Panel with your
15      response.  Next, the District Attorney and then your
16      attorney will be given an opportunity to make a final
17      closing statement and then followed by your closing
18      statement.  Your closing statement should focus on your
19      suitability for parole.  The California Code of
20      Regulations states that regardless of time served, an
21      inmate shall be found unsuitable for and denied parole
22      if, in the judgment of the Panel, the inmate would pose
23      an unreasonable risk of danger to society if released
24      from prison.  And now you have certain rights, those
25      rights include the right to a timely notice of this
26      hearing, the right to review your Central File, and the
27      right to present relevant documents.  Counsel, are you

6

1    satisfied your client's rights have been met to date?

2        **ATTORNEY SPARKS:** Yes.

3        **PRESIDING COMMISSIONER DAVIS:** Thank you. You have

4    an additional right, and that is to be heard by an

5    impartial panel. Now you've heard your panel introduce

6    themselves this morning, is there any reason for you to

7    believe that we would not be impartial?

8        **INMATE MONTENEGRO TRHOUGH INTERPRETER:** (Inaudible).

9        **PRESIDING COMMISSIONER DAVIS:** Thank you. You will

10   receive a written copy of our tentative decision today.

11   That decision becomes effective in 120 days. A copy of

12   the decision and a copy of the transcript will be sent

13   to you. The Panel -- the Board -- has eliminated its

14   appeal process; if you disagree with anything in today's

15   hearing, you have the right to go directly to court with

16   your complaint. You are not required to admit your

17   offense or discuss your offense; however, once again,

18   the Panel does accept the findings of the court to be

19   true. Do you understand that, sir?

20       **INMATE MONTENEGRO TRHOUGH INTERPRETER:** Yes.

21       **PRESIDING COMMISSIONER DAVIS:** Okay. Commissioner,

22   are we going to be dealing with anything from a

23   confidential file today?

24       **DEPUTY COMMISSIONER BLONIEN:** There's no

25   confidential information.

26       **PRESIDING COMMISSIONER DAVIS:** All right. Then I'm

27   going to pass a checklist and documents to both counsel,

7

1  if you'll take a look at that to make sure we're all

2  operating off the same list of documents.  The

3  prosecution, do you have those documents as well?

4      ATTORNEY CUTLER:  Yes.

5      PRESIDING COMMISSIONER DAVIS:  All right.  Then

6  we'll mark that Exhibit 1.  Counsel, anything additional

7  you would like us to consider today?

8      ATTORNEY SPARKS:  No, thank you.

9      PRESIDING COMMISSIONER DAVIS:  All right.  Any

10  preliminary objections?

11     ATTORNEY SPARKS:  No.

12     PRESIDING COMMISSIONER DAVIS:  All right.  Will your

13  client be speaking with us today?

14     ATTORNEY SPARKS:  Yes, but he won't be talking about

15  the crime.

16     PRESIDING COMMISSIONER DAVIS:  All right.  If there

17  are no other matters -- if you'll raise your right hand.

18  Do you solemnly swear or affirm that the testimony you

19  will give at this hearing will be the truth and nothing

20  but the truth?

21     INMATE MONTENEGRO:  Yes.

22     PRESIDING COMMISSIONER DAVIS:  All right, thank you.

23  For a summary of the crime, I'm going to refer to the

24  probation officer's report starting on page 2 under the

25  heading of offense.  It starts on the first paragraph,

26  where it states that:

27          "On November 13th, 1985, Santa Maria police

8

1    officers responded to El Conquistador Bar at

2    210 South Bloosser, B-L-O-O-S-S-E-R,

3    Santa Maria, to investigate a shooting.

4    Officers found Antonio Hernandez Cardona,

5    C-A-R-D-O-N-A, age 22, slumped in the right

6    front passenger's seat of an automobile.

7    Officers observed a gunshot wound into the

8    front of his neck. An ambulance was called and

9    he was taken to Maria Medical Center, where he

10    died at 2315 hours. Doctors concluded the

11    victim died as a result of a gunshot wound to

12    the anterior neck slash chest, exiting through

13    the back. A second entry wound in the left

14    shoulder revealed a .44 caliber bullet. The

15    victim was shot three times. Investigations

16    revealed the victim was the alleged boyfriend

17    of Lilliana Beltran, B-E-L-T-R-A-N, and they

18    had been inside the El Conquistador Bar.

19    Ms. Beltran left the bar and went outside to

20    the victim's car. The defendant followed

21    Ms. Beltran out to the car, sat down in the

22    car, and tried to kiss her. The victim came

23    out of the bar with two friends, saw what was

24    going on, and pulled the defendant out of the

25    car. The victim and defendant verbally argued.

26    The defendant pulled a .44 Magnum pistol from

27    his waistband and fired three or four shots

9

1        into the victim.  The defendant fled the area.

2        The defendant told officers upon his arrest he

3        had hidden in a cardboard box in an alley until

4        daylight, had been in Reedley, California, and

5        had gone on to Mexico, and for the past three

6        years had been living in Guadalupe."

7        Under prisoner's version, as listed in the June 2002

8  Board Report, it states that in an interview for the

9  Montenegro -- an interview for this report, Montenegro

10  indicated that his previous interview with staff

11  psychiatrist Cheema, C-H-E-E-M-A, on 1/16/96, he

12  indicated that his present version remained the same.

13  Montenegro stated that he was involved in a fight with

14  an unknown --

15      **DEPUTY COMMISSIONER BLONIEN:**  Just a question.

16  Mr. Sparks, you're aware that in the '02 psych report

17  there's a different version.

18      **ATTORNEY SPARKS:**  Well, there's probably three

19  versions total.

20      **DEPUTY COMMISSIONER BLONIEN:**  Right.

21      **ATTORNEY SPARKS:**  So, I'm not sure which one you

22  want to refer to ...

23      **PRESIDING COMMISSIONER DAVIS:**  Well, we're going to

24  refer to all the ones that we have, actually, so we'll

25  have this and plus --

26      **DEPUTY COMMISSIONER BLONIEN:**  They're very --

27      **PRESIDING COMMISSIONER DAVIS:**  -- we have the psych