# EXHIBIT 8
# Part 1 of 2

MC-275

Name    Santiago Montenegro

Address    P.O. Box 705/ND-12-L

CTF North Facility

Soledad,CA.93960-0705

CDC or ID Number    H-55090

COURT OF APPEAL-SECOND DIST.

F I L E D

APR - 2 2007

JOSEPH A. LANE          Clerk

VICTOR I. SALAS        Deputy Clerk

IN THE COURT OF APPEAL

SECOND APPELLATE DISTRICT

(Court)

Santiago Montenegro
Petitioner
            vs.

Ben Curry: et.,al;
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

B197875

No. _____

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

This petition concerns:

[ ] A conviction          [X] Parole

[ ] A sentence            [ ] Credits

[ ] Jail or prison conditions   [ ] Prison discipline

[ ] Other (specify): _____

1. Your name:  Santiago Montiago

2. Where are you incarcerated?  Correctional Training Facility, Soledad, California

3. Why are you in custody?  [X] Criminal Conviction  [ ] Civil Commitment

   Answer subdivisions a. through i. to the best of your ability.

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   Second degree murder / With use of a handgun

   b. Penal or other code sections:  Penal Code 187 (a) / Penal Code 12022.5

   c. Name and location of sentencing or committing court:  Santa Barbara Superior Court P.O. Box 21107 Santa Barbara, CA. 93101

   d. Case number:  SMO73867

   e. Date convicted or committed:  October 30, 1992

   f. Date sentenced:  October 30, 1992

   g. Length of sentence: 15 years to life

   h. When do you expect to be released?  Unknown

   i. Were you represented by counsel in the trial court?  [X] Yes.  [ ] No.  If yes, state the attorney's name and address:

   David Ogren Public Defender County of Santa Barbara 3rd FL. Santa Barbara, CA. 93101

4. What was the LAST plea you entered? (check one)

   [XX] Not guilty  [ ] Guilty  [ ] Nolo Contendere  [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [XX] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

SEE ATTACHED PETITION

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

SEE ATTACHED PETITION

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

SEE ATTACHED PETITION

7.  Ground 2 or Ground _____ (if applicable):

SEE ATTACHED PETITION

a.  Supporting facts:

SEE ATTACHED PETITION

b.  Supporting cases, rules, or other authority:

SEE ATTACHED PETITION

8. Did you appeal from the conviction, sentence, or commitment?  [XX] Yes.  [ ] No.    If yes, give the following information:
   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
   Second Appellate District,Division Six

   b. Result:  JUdgment Affirmed                          c. Date of decision:  May 28,1993

   d. Case number or citation of opinion, if known:  B072387

   e. Issues raised:  (1) Counsel filed a statement pursuant to People v. Wende

      (2)        No issues were raised

      (3)

   f. Were you represented by counsel on appeal?  [XX] Yes.  [ ] No.  If yes, state the attorney's name and address, if known:

   Gilbert W. Lentz 1114 State Street,Suite 240 Santa Barbara,CA.93101

9. Did you seek review in the California Supreme Court?  [ ] Yes.  [XX] No.    If yes, give the following information:

   a. Result:                                            b. Date of decision:

   c. Case number or citation of opinion, if known:

   d. Issues raised:  (1)

      (2)

      (3)

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

11. Administrative Review:
    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See In re Muszalski (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

    N/A

    b. Did you seek the highest level of administrative review available?  [ ] Yes.  [X] No.
    *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court? ☐ Yes. If yes, continue with number 13. ☒ No. If no, skip to number 15.

13. a. (1) Name of court: _____

    (2) Nature of proceeding (for example, "habeas corpus petition"): _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

    No Delays _____

_____

16. Are you presently represented by counsel? ☐ Yes. ☐ No. If yes, state the attorney's name and address, if known:

_____

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☐ No. If yes, explain:

_____

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

    This Court has original jurisdiction _____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 3-23-07

▶

_____
(SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]    **PETITION FOR WRIT OF HABEAS CORPUS**    Page six of six

1  Santiago Montenegro
   P.O. Box 705/ND-12-L
2  CTF North Facility
   Soledad,CA.93960-0705
3
4  In Propria Persona
5
6
7
8           IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
9                   SECOND APPELLATE DISTRICT
10
11 IN RE: SANTIAGO MONTENEGRO        CASE NO. _____
12                                   PETITION FOR WRIT OF HABEAS
         PETITIONER                  CORPUS AND MEMORANDUM OF
13                                   POINTS AND AUTHORITIES IN
                                     SUPPORT THEREOF.
14 ON HABEAS CORPUS
   _____/
15
16
17
18       ON APPEAL FROM THE SUPERIOR COURT OF LOS ANGELES COUNTY
19
   TO:   THE HONORABLE PRESIDING JUSTICE OF THE COURT OF APPEAL, SECOND
20       APPELLATE DISTRICT AND THE ASSOCIATE JUSTICE.
21
         Santiago Montenegro, (hereafter petitioner) In Propria, Persona
22
   hereby petitions this Honorable Court for Writ Of Habeas Corpus foll-
23
   owing the decision of the Superior Court of Santa Barbara County.
24
25 //
26 //
27 //
28 //

                            1.

1  Santiago Montenegro, H-55090
   P.O. Box 705/ND- 12-L
2  CTF North Facility
   Soledad,CA.93960-0705

3

4  In Propria Persona

5

6

7

8              IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

9                        SECOND APPELLATE DISTRICT

10

11 IN RE: SANTIAGO MONTENEGRO            CASE NO. _____

12                                       PETITION FOR WRIT OF HABEAS
           PETITIONER                    CORPUS AND MEMORANDUM OF
13                                       POINTS AND AUTHORITIES IN
                                         SUPPORT THEREOF.
14 ON HABEAS CORPUS
   _____/

15

16

17                            1.

18                  PETITION FOR WRIT OF HABEAS CORPUS

19

20 TO:  THE HONORABLE PRESIDING JUSTICE OF THE COURT OF APPEAL, SECOND
        APPELLATE DISTRICT AND TO THE HONORABLE ASSOCIATE JUSTICE.

21

22     Comes Now Santiago Montenegro (hereafter petitioner) In Propria

23 Persona. Petitioner is unlawfully restrained of his liberty. This

24 petition is intended to give meaning to Santiago Montengro's sentence

25 of 15 years to life for second degree murder - by seeking to overturn

26 the Board of Parole Hearings "Illegal And Unconstitutional" decision

27 refusing to grant him parole for the (2nd) time since becoming elig-

28 ible for parole on January 4, 2003.

                                  2.

1  Under the parole ststute (penal code section 3041, amended 1976,c.
2  1139), parole is now the norm rather than the exception. (penal code
3  section 3041 (a), the board "shall." normally set a parole release date
4  at the initial hearing". A life prisoner must have a release date set
5  when his release would not pose a danger to the public. (penal code
6  section 3041 (b). That determination must be based on criteria set
7  forth in the Penal Code. The Board is given latitude to formulate
8  criteria implementing the statutory mandate. (Penal Code Section
9  5076.2). However, this criteria is limited to the parameters estab-
10 lished by statute and legislative intent. (Terhune v. Superior Court,
11 65 cal. App. 4th 864, 872-873 (1998).

12      In the case of this petitioner., there is "No Evidence" in the
13 record to support the Board's denial of parole at his (2nd) parole
14 hearing. The court is asked to issue a formal "Order To Show Cause"
15 and require the respondent to present to the court justification for
16 the Board's decision in this case. The court is asked to find the
17 decision violated due process of law and order the Board to set
18 this petitioner's parole release date. The court is also asked to
19 declare the rights of the parties under the Due Process and Equal
20 Protection Clauses, in regards to the Board's interpretation of
21 Section 3041, Penal Code, and to issue habeas relief accordingly.

22      Generally, Petitioner asserts that he is being subjected to an
23 unconstitutional condition in the determination of his parole appli-
24 cations because the Board of Parole Hearings has been operating out-
25 side the law pursuant to a policy against granting paroles, such that
26 the parole statute has been and currently is misinterpreted to the
27 extent that petitioner has been deprived all substantive due process
28 protections of the law including his federally protected liberty in-

3.

1  terest to parole. Petitioner asserts, within this context, that the

2  Board has been found to be operating pursuant to a "No" parole policy

3  which reduces parole hearings to pro forma sham hearings where parole

4  commissioners are precluded by this policy (and their own abiding an-

5  imus) from being fair or impartial, which violates substantive due

6  process of law.

11.

PARTIES

PETITIONER, SANTIAGO MONTENEGRO, CDC#H-55090 is a prisoner of the

State of California, incarcerated at the Correctional Training Facility

Soledad, California.

RESPONDENT, BEN CURRY, is the Warden of the Correctional Train-

ing Facility Soledad, California and is the legal custodian of the

petitioner

111.

STATEMENT OF THE CASE

Preliminary formalities (HT 1). 1/ (Exhibit 1, transcript of

parole hearing conducted on August 16, 2006).

Santiago Montenegro (hereafter petitioner) was recieved by the

California Department of Corrections & Rehabilitations (CDCR) 11/06/92

from Santa Barbara County for the offense of murder 2nd with use of a

firearm. He is sentenced to an indeterminate term of 17 years to life.

Case number SM073867. His Minimum Eligible Parole Date (MEPD) is set

for February 3, 2003.

---

1. References to the parole hearing trancripts will be indicated by
HT followed by page number, i.e, (HT 0).

4.

1

## COMMITMENT OFFENSE

2

3      The following are statements taken from the petitioner's probat-

ion officer report dated October 21,1992. (See Exhibit 2 at p.2-3).

4

5      On November 13, 1985, Santa Maria Police Officers responded to

El Conquistador Bar, 210 S. Blosser, Santa Maria, to investigate a

6

shooting. Officers found Antonio Hernandez Cardona, age 22, slumped in

7

the right front passenger seat of an automobile. Officers observed a

8

gun shot wound in the front of his neck, an ambulance was called and

9

he was taken to Marian Medical Center where he died at 2315 hours.

10

Doctors concluded the victim dided as a result of a gun shot wound to

11

the anterior neck/chest, exiting through the back. A second entry

12

wound in the left shoulder revealed a .44 caliber bullet. The victim

13

was shot three times.

14

Investigation revealed the victim was the alleged boyfriend of

15

Liliana Beltran, and they had been inside the El Conquistador Bar. Ms.

16

Beltran left the bar and went outside to the victim's car. The defen-

17

dant followed Ms. Beltran out to the car, sat down in the car and

18

tried to kiss her. The victim came out of the bar with two friends,

19

saw what was going on and pulled the defendant out of the car. The

20

victim and defendant verbally argued, the defendant pulled a .44 mag-

21

num pistol from his waistband, and fired three or four shots, killing

22

the victim. The defendant fled the area.

23

The defendant told officers upon his arrest, he had hidden in a

24

cardboard box in an alley until day light, had been in Reedley, Cali-

25

fornia, Tijuana, Mexico and for the past two years had been living in

26

Guadalupe.

27

28

5.

## BOARD FINDINGS

In the matter of Santiago Montenegro, CDC number H-55090. The panel reviewed all the information received from the public and relied on the following circumstances in concluding that the prisoner is not suitable for parole and would pose an unreasonable risk to society or a threat to public safety if released from prison.

The offense was carried out in an especially callous manner, and the motive for the offense was very trivial in relation to the offense.

## MENTAL HEALTH EVALUATION

The psychological report by Dr. William Gamard, Ph.D is supportive of parole pursuant to Penal Code Section 5079. (see Exhibit 3 at pp.4-6).

CURRENT DIAGNOSTIC IMPRESSIONS:

    Axis   I:      No contributory.

    Axis  II:      No contributory.

    Axis III.      No contributory.

    Axis  IV:      Incarceration.

    Axis  V:       GAF equals 85.

Should this inmate at this time be given a parole or release date his prognosis for maintaining his present gains in the community is excellent.

ASSESSMENT OF DANGEROUSNESS:

    A.   This inmate has not received any CDC-115 violations
         for violent behavior during his entire incarceration
         of 16 years.  He only had one CDC-115, whis was on
         March 6, 2002 for refusing to work.  Therefore, it is
         felt that he would pose a less than average risk for
         violence when compared with this Level Two inmate
         population.

6.

B. If released to the community his violence potential is estimated to be no higher than the average citizen in the community. This based upon the following considerations: there is no evidence of any previous violent behavior, or violent behavior since his offense. There was no history of prior arrest other than one DUI. Although he did flee the scene of the crime, evaded arrest for six years, and formerly appeared to lack remorse for his crime, he has since accepted full responsibility for his offense.

CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS:

A. This inmate is responsible for his behavior. He has the ability to abide by institutional standards and has done so during his incarceration period.

B. This inmate has no mental health disorder, which would necessitate treatment either during his incarceration period or following parole.

C. Since this inmate denies having any alcohol or drug problem, no recommendations are made in this area.

IV.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

Petitioner filed this petition in the superior Court in the first instance in asmuch as the Board of Parole Hearings no longer provides for administrative appeals.

V.

VERIFICATION

I am the petitioner in this action. All facts in the above documents, not otherwise supported by citation to the record, exhibits, of other documents, are true of my own personal knowledge. I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on this date 3-23-07 , at the Correctional Training Facility at Soledad, California.

Santiago Montenegro

7.

# VII.

## CRITERIA FOR PAROLE

The "unreasonable risk" requirement is the standard required by statute (3041,subd,[b]), and by the Board regulations in order to justify a denial of parole. (CCR 15. 2402,subd [a]), Section 3041,(a), Penal Code requires, in pertinent part:

> One year prior to the inmates minimum eligible parole date a panel consisting of at least two commissioners of the Board Of Parole Hearings shall again meet with the inmate and normally set a parole release date as provided in section 3041.5. The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to public.... Subd. [b] of section 3041 provides in pertinent part, that: the panel or board shall set a release date unless it dteermines that the gravity of the current convicted offense or offenses, is such that consideration of public safety requires a more lengthy period of incarceration of this individual, and that a parole date, therefore, cannot be fixed at this meeting.

## TITLE 15, DIVISION 2, BOARD REGULATIONS

## 2402. DETERMINATION OF SUITABILITY.

(a) General. The panel shall first determin whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison. (emphasis added).

(b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before and after the crime; past and present attitude toward the crime; any conditions of treatment or controle, including the use of special conditions under which the prisoner may safely be releaseed to the community;

8.

and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

(c) Circumstances Tending To Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as guidelines; the importance attached to any circumstances or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitabiliyt include:

(1) Commitment Offense: The prisoner committed the offense in an especially heinous, atrocious or cruel manner. the factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.

(B) The offense was carried out in a dispassionate and calculated manner such as an execution-style murder.

(C) The victim was abused, defiled or mutilated during or after the offense.

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record Of Violence. The prisoner on previous occasions inflicted or attempted to inflect serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unsuitable Social History. The prisoner has a history of unsutable or tumultous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(d) Circumstances Tending To Show Suitability. The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstances or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

(1) No Juenile Record. The prisoner does not have a record assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs Of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation For Crime. The prisoner commited his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Sydrome. (Not quoted here as inapplicable).

(6) Lack Of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be be put to use upon release.

(9) Institutional Behavior. Institutional activities and enhanced ability to function within the law upon release.

## VIII.

## PRAYER FOR RELIEF

Santiago Montenegro states that he has no other plain or speedy remedy save habeas corpus: therefore, he prays this Honorable Court:

1. Issue an order to show cause;

2. Appoint counsel to represent petitioner in any and all proceedings in this matter.

3. Conduct an evidentiary hearing;

4. Order respondents to provide petitioner with reasonable discovery;

5. Declare the rights of the petitioner;

6. Grant any other further relief the court deems proper and just.

Date: 3-23-07

Respectfully, submitted

Santiago Montenegro

IX.

MEMORANDUM OF POINTS AND AUTHORITIES

THE LAW ON PAROLE

Penal Code section 3041, subdivision (a) requires that at a suitability hearing the board "shall normally set a parole release date...Subdivision (b) provides that a release date "shall" be set "unless" the Board determins that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of public safety requires a more lengthy period of incarceration for this individual...See, e.g, In re Rosenkrantz, 29 Cal.App. 4th 616, at 653, (2002), citing to In re Ramirez, 94 Cal. App. 4th 549, at 565. The parole board regulations make this criterion more specific. The panel can deny only if the prisoner would pose an unreasonable risk of danger to society if released from prison. (Cal. Code Regs., tit 15, 2402, subd (a). The regulations set forth specific criteria to determine whether under the standard a prisoner is suitable for parole.

Under the rule created by the United States Supreme court in Greenholtz v. Inmates of Nebraska Penal (1979) 442 U.S. 1,12, and Board of Pardons v. Allen (1987) 482 U.S. 369, 377-378, a state's statutory parole scheme which used mandatory language "creates a presumption that parole will be granted" when or unless certain designated findings are made, and therefore gives rise to a constitutional liberty interest. The California parole scheme uses mandatory language which is parallel to the parole scheme found in Greenholtz and Allen

12.

1    to give rise to a protected liberty interest in parole. Accordingly,

2    the California parole scheme gives rise to a cognizable liberty in-

3    terest in release on parole. See also, McQuillion v. Duncan, 306 F.3d

4    895, 902 (9th Cir. Cal.2002); and Biggs v. Terhune, 334 F.3d 910

5    (9th Cir. Cal. 2003), affirming these propositions in California's

6    section 3041, penal code. Following on the heels of McQuillion, supra,

7    the siminal case of In er Rosenkrantz held that the satutory parole

8    scheme creats a liberty interest under California due process of law.

9    Id., at 29 Cal. 4th at 668, fn.12. The court then applied the clearly

10   established federal due process test to review a gubernatorial dec-

11   ision to deny parole. It recognized that a gubernatorial decision is

12   subject to judicial review to determine whether there is "some evid-

13   ence" to support the decision. In this case, the decision by the Board

14   to find petitioner unsuitable for parole is also subject to review to

15   determine if there is some evidence to support the decision, the ev-

16   idence must bear some indicis of reliability, Cato v, Rushen, 824 F.

17   2d 703, 705 (9th Cir. Cal. 1987); also, Jancsek v. Oregon Board of

18   Parole. 833 F. 2d 1389, 1390. (9th Cir. 1987). The evidence must be

19   relevant and material to the decision. (Cal. Code Regs., 15. 2000 (b)

20.  (50) Good Cause; (63) Material Evidence, (90) Relevant Evidence (Ibid.

21   (50) Good Cause: A finding by the board based upon a preponderance of

22   the evidence that there is a factual basis and good reason for the

23   decision made. Evidence which tends to prove or disprove an issue or

24   facts in dispute.In re Caswell, 92 Cal. App. 4th 1017, 1030;McQuillion

25   supra, 306F.3d at 906,910.

26

27       A.   THE DECISION TO FIND PETITIONER UNSUITABLE FOR
              PAROLE IS AN ABUSE OF DISCRETION AND VIOLATES DUE
              PROCESS; PETITIONER MUST BE GRANTED A PAROLE DATE.

28

13.

1      1.  THE DECISION IS NOT SUPPORTED BY ANY RELEVANT OR
2          MATERIAL EVIDENCE.

3     Proceeding under the presumption  that the evidence must be rel-

4  evant and material, there was no relevant or material evidence to ba-

5  se denial of parole to petitioner. Under federal due process analysis,

6  after finding a liberty interest, it must be determined what process

7  is due. Morrissey v. Brewer (1972) 408 U.S. 471,481. In this context,

8  the United States Supreme Court has held that there must be "some ev-

9  idence" Superintendent v. Hill (1985) 472 U.S. 445,456, where it sta-

10 tes that "the fundamental fairness guarnteed by the due process clause

11 does not require courts to set aside decisions of prison administra-

12 tors that have some basic fact."

13    Additionally, the evidence underlying the Board's decision must

14 have some indicia of reliability. Jancsek, supra 833 F. 2d at 1390.

15 In this case, petitioner contends that the Board of Parole Hearings

16 erroneously concluded there is some evidence to justify the finding

17 that he is suitable for parole.

18

19     (a).  THE COMMITMENT OFFENSE DOES NOT CONSTITUTE "SOME
20          EVIDENCE" FOR DENIAL OF PAROLE IN THIS CASE.

21    In finding petitioner unsuitable for parole the panel stated

22 that the commitment offense was carried out in an especially vicious

23 and brutal manner. Additionally, the motive of this crime was inexpli-

24 icable and trivial in relationship to the offense. Moreover, the off-

25 ense was carried out in a manner which demonstrates exceptional insen-

26 sitive disregard for human suffering.Such a finding is contrary to the

27 facts of the case, where the record indicates petitioner would pose a

28

1  low degree of risk to society if he were released from prison at this

2  time. It could be argued that any and all murders are carried out in

3  a vicious, brutal manner without regard to human suffering. and in

4  fact is what second degree murder is. But used as a regulation for

5  unsuitability would have to denote something greater than an ordinary

6  or typical killing. Nonetheless, as the psychological evaluation re-

7  port clearly demonstrates, petitioner has made substantial and signif-

8  icant progress in growth and maturation while incarcerated. The record

9  is replete with his achieving the correctional objectives of reforming

10  his life, and it would be a disservice to the professionalism and pro-

11  grams of the Department to devalue petitioner's officially-recognized

12  progress and deny him parole because he committed the offense. Despite

13  this offense, he was sentenced to a parolable sentence. Certainly, his

14  case falls within the meaning expressed in Ramirez,supra, that any

15  murder is parolable under the statute. Yet, the panel made no effort

16  to distinguish his offense as containing circumstances which are be-

17  yond the minimum necessary to sustain a conviction for the crime of

18  second degree murder.

19

20      2.   THE BOARD"S BOILERPLATE RELIANCE ON STATIC HISTORY
            FACOTORS VIOLATES FUNDAMENTAL DUE PROCESS.

21

22      The Ninth Circuit has expressed concern about the use of the

23  commitment offense to repeatedly deny parole. As the circuit in Biggs

    v. Terhune (9th Cir. 2003) 334 F. 3d 910,916, recently acknowledge:
24
    "Due process is not a mechanical instrument. It is a process. It is
25
    a delicate process of adjustment inescapably involving the exercise of
26
    judgment by those whom the constitution has entrusted with the unfold-
27
    ing of the process. "Lankford v. Idaho 500 U.S. 110,121 (1991 (quoting
28

15.

1  Joint Anti-Fascist Refugee Comm. v.McGrath,341 U.S. 123, 163 (1951)
2  (Frankfuter, J., Concurring). A continued reliance in the future on an
3  unchanging factor, the circumstances of the crime... runs contrary to
4  the rehabilitative goals espoused by the prison system and could re-
5  sult in a due process violation. See also, In re Rosenkrantz, supra,
6  29 Cal. 4th at 689 (Moreno, J., concurring). (Emphasis added).Biggs
7  was denied at his first initial parole hearing. The Circuit allowed
8  that the commitment offense could be used at that initial hearing as
9  a legitimate cause for denial of parole, but questioned whether it
10 could be used as a factor to continue denying parole at subsequent
11 hearings. At first blush, the use of the offense in the petitioner's
12 case at his initial hearing might have been upheld as "some evidence".
13 but the hearing challenged here is his (2nd) subsequent hearing. The
14 Biggs court gave clear indication that had it been Biggs subsequent
15 hearing, the court may have found against the Board on using the off-
16 ense to again base parole denial on.

17      When considering the offense as circumstances for unsuitability
18 the Board must be and should be mindful that the circumstances of the
19 offense are static and unchangeable. The most important aspect of this
20 case is the dynamic changes that years of imprisonment and exposuer to
21 positive, behavioral programs has made in this petitioner. The record
22 shows that he has achieved the objective of corrections, i.e., to co-
23 rrect behavior, and the record shows official and professional recog-
24 nition that he does not pose an unreasonable risk to public safety if
25 paroled. Thus, since there is no evidence whatsoever of unreasonable
26 risk, which is the standard by which the Board's decision legally hi-
27 nges, the Board's decision denying petitioner parole must be reversed.
28 The statutory default must be enforced in this case.

16.

3.    THE BOARD'S STATEMENT OF REASON WAS INADEQUATE.

The Board's statement of reasons were inadequate and inapprop-riate. In In re Strum (1974) 11 Cal. 3d 258, 113 Cal. Rptr. 361, 521. P. 2d 97. The California Supreme Court held that in order to comply with a prisoner's due process rights, the Board must "support all its denials of parole with a written definitive statement of its reasons therefore and to communicate such statements to the inmate concerned". (Id., at P. 273.) The Strum court articulated three rationales as to why the Board must provide a written statement of reasons granting pa-role: (1) to promote carefule decision making; (2) to allow inmates to make an informed application for relief if parole is denied; and (3) to permit meaningful judicial review. (Id., at P. 270.) Other courts have taken similar positions where judges have failed to adequately articulate their findings. See People v. Martin (1986) 42 Cal. 3d 905, 913-915, and cases cited. In Martin the court said, citing several ca-ses, such as In re Podesto (1976) 15 Cal. 3d 921, that

> "we emphasized that a requirement of articulated reasons
> to support a given decision serves a number of interests;
> it is frequently essential to meaningful review; it acts
> as an inherent guard against careless decisions, insuring
> that the judge himself analyzes the problem and recognizes
> the grounds for his decision-making process by helping to
> persuade the parties and the public that the decision-mak-
> ing is careful, reasoned and equitable". (Ibid.)

Here, the Board's statement of reasons is crtptic at best. It merely recites the commitment offense as the primary basis upon which it denied parole and list pro forma boilerplate terminology from its Parole Denial Worksheet/Fm. 1000A. It dose not explain what it is ab-out the commitment offense and its inclusive aggravvting circumstances that make the petitioner an "unreasonable risk of danger to society if

1  released". (see section 2402, subd. (a).) or how the commitment offe-

2  nse was "particularly egergious". It did not explain how all the evi-

3  dence supporting petitioner's suitability for parole, including all

4  the psychological clearances, and lack of any violent criminal history

5  did not outweigh under the ordinary rules of the "perponderance of

6  evidence" standard employed by the Board's regulations (see section

7  2000 (b), (50) - the static history of the commitment offense. There-

8  fore, the Board's abused its discretion in violation of procedural due

9  process by failing to properly apply its own burden of proof.

10      The Court is not here asked to substitute its judgment for that

11  of the Board, nor is it asked to weigh or reweigh the evidence. Rather,

12  the court is asked to review de novo the pre-decisional process of the

13  hearing, including the evidence submitted, determined the legal sign-

14  icance of that evidence as relevant or irrelevant, and then determine

15  if the Board met its own standard of proof in weighing and balancing

16  process.

17      4. THE DECISION TO DENY PETITIONER PAROLE WAS ARBITRARY
        AND AN ABUSE OF DISCRETION, UNSUPPORTED BY "SOME EVID-
18      ENCE, "VIOLATING HIS RIGHT TO DUE PROCESS GUARANTEED
        BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTIT-
19      UTION OF THE UNITED STATES.

20

21      Although the Board of Parole Hearings (hereafter Board) discret-

22  ion in parole matters has been described as "broad", it is not absol-

23  ute (In re Powell (1988) 45 Cal. 3d 894, 940), as its discretion is

24  "cabined" by criteria, in petitioner's case, listed in the California

25  Code of Regulations, title 15 § 2402 McQuillion v. Duncan (9th Cir.

26  2003) 306 F. 3d 895, 912). Petitioner has not only a liberty interest

27  in parole (In re Rosenkrantz (2002) 29 Cal. 4th 616, 652) but an ex-

28  pectation that [he] will be granted parole unless the Board finds in

the exercise of its discretion that [the prisoner is] unsuitable <u>for</u>
<u>parole in light of the circumstances specified by statute and by the</u>
<u>regulations</u> (<u>Ibid</u>. at 654, emphasis added). Petitioner's liberty inter-
est in and "expectation" of parole, does not attach upon being found
suitable for parole , but upon entrance of prison gates (<u>Biggs v. Ter-</u>
<u>hune</u> (9th) Cir. 2003) 334 F. 3d 910,915). A decision of unsuitability
for parole must be supported by some evidence having some indicia of
reliability (<u>Ibid</u>., Citation). There must also be a rational connection
between the evidence and the decision made; if not the decision is ar-
bitrary and an abuse of discretion, violating the due process clause
(<u>Guidotti v. County of Yolo</u> (1989) 214 Cal. App. 3d 1552,1561; <u>Oregon</u>
<u>Resource Council v. Lowe</u> (9th Cir. 1997) 109 F. 3d 521,526).

    As will be demonstrated, the decision to deny petitioner parole
for the 2nd time, is not supported by "some evidence" and is therefore
an abuse of discretion, violating his right to due process. (<u>Rosenkran</u>
<u>tz v. Marshall</u>, 444 F. Supp. 2d 1063. C.C Cal. (2006) U.S. Dist. Lexis
79358; (<u>Martin v. Marshall</u>, 431 F. Supp. 2d 1038 (N.D. Cal. 2006).
Petitioner's case is exactly what Biggs envision when it stated that
repeated refusals to grant a parole release date to an inmate with an
exemplary post-conviction record may violate the prisoner's due proc-
ess rights Biggs, 334 F.3d at 916. The record in this case is replete
with evidence of petitioner's remorse and rehabilitation, including
glowingly positive psychological reports. (see petitioner's exhibit 3
at pp. 4-6). As detailed above, every psychologist and correctional
counselor who has evaluated petitioner has concluded that petitioner
would pose no significant risk of danger if released. Regardless of
whether the BPH's ever was entitled to rely upon the commitment off-
ense to find that petitioner posed an unreasonable risk of danger and

19.

was unsuitable for parole , in the exceptional circumstances presented by this case, the BPH's continued reliance on the commitment offense violates due process because it resulted in an arbitrary decision and because the facts surrounding the offense do not now constitute "some evidence" possing "some indicia of reliability" that petitioner pose a danger to the community. See Hill, 472 U.S. at 455; Biggs, 334 F. at 917; Irons, 358 F. Supp. 2d at947; Masoner v. State, 2004 U.S. Dist. Lexis 9221,2004 WL 1080177, at *1-2 (C.D.Cal. 2004).

## ARGUMENTS

### a.  THE COMMITMENT OFFENSE FOR THE SECOND TIME IS NOT "SOME EVIDENCE" UPON WHICH PAROLE CAN BE DENIED.

Petitioner's second parole hearing was held on August 16, 2006. Presiding Commissioner, James Davis states: This hearing is being co-ducted pursuant to Penal Code Section 3041 and 3042 and the rules and regulations of the Board of Prison Terms governing parole considera-tion hearings for life inmates. (HT 7). In closing the commissioner concluded there were Two reasons why this petitioner is not suitable for parole and would pose would pose an unreasonable risk to society or a threat to public safety if released from prison. (1). The offense was carried out in an especially callous manner, and (2). The motive for the offense was very trivial in relation to the offense. (HT 33).

The relevant evidence does not merely fail to support but re-futes the conclusion that the petitioner committed his offense in a especially callous maner.

### b.  THE MANNER IN WHICH PETITIONER COMMITTED HIS OFFENSE DOES NOT DEMONSTRATE AN ESPECIALLY CALLOUS MANNER

1    "[A]ll second degree murders by definition involve some callousness--
2    i.e., lack of emotion or sympthy, emotional insensitivity, indiffer-
3    ence to feelings and suffering of others. [Citation.] As noted, how-
4    ever, parole is the rule, rather than the exception, and a conviction
5    for second degree murder does not automaticly render one unsuitable."
6    (In re Smith (2003) 114 Cal. App. 4th 343, 366 [7 Cal. Rptr. 3d 655],
7    italics omitted.) In re Ramirez, supra, 94 Cal. App. 4th 549, as in
8    this case, the Board denied a parole release date on the basis of a
9    finding that the nature of the inmates offense displayed a "callous
10   disregard for human suffering." (Id. at pp. 558, 568.) Setting aside
11   that determination, the court agreed that "the gravity of the commit-
12   tment offense or offenses alone may be a sufficient basis for denying
13   a parole application, so long as the Board does not fail to consider
14   all other relevent factors," (id. at p. 569), but attached an impor-
15   tant caveat. As the court explained, "[a]ll violent crime demonstrates
16   the perpetrator's potential for posing a grave risk to public safety,
17   yet parole is mandatory for violent felons serving determinate senten-
18   ces.(Pen. Code, § 3000, subd. (b) (1).

19        Under the Board regulations, base terms for life prisoners are
20   not calculated until after an inmate is deemed suitable for release.
21   (§ 2282, subd. (a).) The regulations therefore contemplate that an
22   inmate may be deemed suitable for release even though his offense
23   demonstrated "exceptionally callous disregard for human suffering."
24   (§ 2402, subd. (c) (1) (D).)

25        Because the relevant evidence shows no more callous disregard
26   for human suffering than is shown by most second degree murder off-
27   enses, the Board's use of this factor to conclude that petitioner
28   committed his offense "in an especially cruel and callous manner" was

21.

1   arbitrary and capricious. Examined in light of the record, the Board's
2   explanation of why petitioner is not suitable for release from prison
3   is revealed as no more than the mouthing of conclusionary words. The
4   reliable factual underpinning that is constitutionally required cannot
5   be shown (see McQuillion v. Duncan (9th Cir. 2002) 306 F. 3d 895,902;
6   In re Caswell (2001) 92Cal. App. 4th 1017,1027, [112 Cal. Rptr. 2d 462]
7   even under the exceptional deferential standard of review.

8       This is petitioner's second suitability hearing in which the
9   board relied upon unchanging factors to deny petitioner a parole date.
10  The Ninth Circuit has held that California's parole scheme creates a
11  cognizable liberty interest in release on parole because Penal Code §
12  3041 uses mandatory language and is similar to the Nebraska and Montana
13  statutes addressed in Greenholtz and Allen, respectively. McQuillion,
14  306 F.3d at 901-902. As the Ninth Circuit has explained, "Section 3041
15  of the California Penal Code creates in every inmate a cognizable lib-
16  erty interest in parole which is protected by the procedural safeguards
17  of the Due Process Clause, and that interest arises upon the incarcer-
18  ation of the inmate. Biggs v. Terhune, 334 F.3d 910, 914-915 (9th Cir.
19  2003). Petitioner has now served 15 years on his sentence, under these
20  circumstances, the nature of the offense has lost any predictive value
21  and continued reliance on it to find petitioner unsuitable violated
22  due process. (Bair v. Folsom State Prison 2005 U.S. Dist. Lexis 29952
23  (E.D. Cal. 2005). The Biggs Court held, in relevant part:

24
25          [The] parole board's sole supportable reliance on the
            gravity of the offense and conduct prior to imprisonment
26          to justify denial of parole can be initially justified
            as fulfilling the requirements set forth by the state.
27          Over time, however, should Biggs continue to demonstrate
            exemplary behavior and evidence of rehabilitation, denying
28          him a parole date simply because of the nature of Biggs
            offense and prior conduct would raise serious questions

                                    22.

involving his liberty interest in parole. A continued re-
liance in the future on unchanging factor, the circumstances
of the offense and conduct prior to imprisonment runs cont-
rary to the rehabilitative goals espoused by the prison sys-
tem. (<u>Biggs v. Terhune, supra</u>, 334 F.3d at 916-917).

## CONCLUSION

When the court applies the some evidence standard as properly
understood to the circumstances of Santiago Montenegro, the court will
find that the Board's decision was not based on some relevant reliable
evidence that reasonably suggest that he poses a current, unreasonable
threat to public safety. For these reasons, the petitioner respect-
fully request that this court vacate the Board's determination of un-
suitability and direct the Board to set a parole date for the Petitio-
ner.

Date: 3-23-07

_____
Santiago Montenegro

23.

## DECLARATION OF SANTIAGO MONTENEGRO

I declare as follows:

I am the petitioner in this case. I am over the age of eighteen years. I am a party to the attached action. I am a resident of the Correctional Training Facility in Soledad, California. My address is Post Office Box 705/ND-12-L / CTF North Facility / Soledad, California. 93960-0705. I served the attached document entitled "Writ Of Habeas Corpus" on the persons/parties specified below by placing a true copy of said document into a sealed envelope with the appropriate postage affixed thereto and surrendering said envelope to the following:

OFFICE OF THE ATTORNEY GENERAL
300 South SPRING STREET
LOS ANGELES, CA. 90013

I declare under penalty of purjury under the laws of the United States that the foregoing is true and correct. Executed this _23_ day of _March_ . 2007 at the Correctional Training Facility in Soledad, California.

_____
Declarant

24.

# EXHIBIT 1

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

| | |
|---|---|
| In the matter of the Life ) | |
| Term Parole Consideration ) | CDC Number H-55090 |
| Hearing of: ) | |
| ) | |
| SANTIAGO MONTENEGRO ) | |
| _____ ) | |

CORRECTIONAL TRAINING FACILITY

SOLEDAD, CALIFORNIA

AUGUST 16, 2006

PANEL PRESENT:

JAMES DAVIS, Presiding Commissioner
NOREEN BLONIEN, Deputy Commissioner

OTHERS PRESENT:

SANTIAGO MONTENEGRO, Inmate
PATRICK SPARKS, Attorney for Inmate
LYNN CUTLER, Prosecutor
JOSE ZAVALA, Spanish Interpreter
ED MARTINEZ, Commissioner/Observer
Two Correctional Officers, Unidentified

INMATE
COPY

CORRECTIONS TO THE DECISION HAVE BEEN MADE

| | | |
|---|---|---|
| _____ | No | See Review of Hearing |
| _____ | Yes | Transcript Memorandum |

Don Larson -- Vine, McKinnon & Hall

ii

## INDEX

| | Page |
|---|---|
| Proceedings | 1 |
| Case Factors | 7 |
| Pre-Commitment Factors | 12 |
| Post-Commitment Factors | 17 |
| Parole Plans | 25 |
| Closing Statements | 30 |
| Recess | 32 |
| Decision | 33 |
| Adjournment | 36 |
| Transcriber Certification | 37 |

--oOo--

1

1      P R O C E E D I N G S

2          **PRESIDING COMMISSIONER DAVIS:** This is a Subsequent

3      Parole Consideration Hearing for Santiago Montenegro,

4      CDC number H-55090.  And before we get started, we do

5      have an interpreter with us today, so I will go ahead

6      and swear you in, sir.  Raise your right hand, do you

7      solemnly swear to translate from English to Spanish and

8      from Spanish to English to the best of your ability

9      accurately?

10         **INTERPRETER ZAVALA:** I do.

11         **PRESIDING COMMISSIONER DAVIS:** Thank you.  Today's

12     date is August 16th, 2006.  We're located at the

13     Correctional Training Facility in Soledad.  The inmate

14     was received on November 6th, 1992, from Santa Barbara

15     County, the life term beginning on January 23rd, 1993,

16     with a minimum eligible parole date of January 24th,

17     2003.  The controlling offense for which the inmate has

18     been committed is murder second with a weapon, case

19     number SN073860 -- 867, excuse me, better repeat that,

20     SN073867 -- count 1, Penal Code Section 187 second slash

21     12022.5 paren (a).  The inmate received a term of 15

22     years to life plus two.  This hearing is being tape

23     recorded, and for the purposes of voice identification,

24     we will each state our first and last name, spelling the

25     last name, and when it reaches you, Mr. Montenegro, if

26     you also will give us your CDC number, please, sir.  So

27     I will start and move to my left, I'm James Davis,

2

1    D-A-V-I-S, Commissioner.

2         **DEPUTY COMMISSIONER BLONIEN:**  I'm Noreen Blonien,

3    B-L-O-N-I-E-N.  I'm a Deputy Commissioner.

4         **ATTORNEY CUTLER:**  I'm Lynn Cutler, C-U-T-L-E-R.  I'm

5    the prosecutor.

6         **ATTORNEY SPARKS:**  Patrick Sparks, S-P-A-R-K-S,

7    attorney for Mr. Montenegro.

8         **INMATE MONTENEGRO:**  Santiago Montenegro, S, S, S ...

9         **PRESIDING COMMISSIONER DAVIS:**  Just your last name

10    for spelling.

11         **INMATE MONTENEGRO:**  Montenegro, M-O-N-T-E-N-E-G-R-O,

12    H-5590 (verbatim).

13         **INTERPRETER ZAVALA:**  Jose Zavala, Z-A-V-A-L-A,

14    Spanish interpreter.

15         **COMMISSIONER MARTINEZ:**  Ed Martinez, M-A-R-T-I-N-E-Z

16    Commissioner/Observer.

17         **PRESIDING COMMISSIONER DAVIS:**  We want the record

18    also to reflect we're joined by two correctional

19    officers here today, who will not be joining us, for

20    security purposes only, and will not be actively

21    participating in this hearing.  Mr. Zavala, if you will

22    read this Americans with Disabilities Act statement,

23    please, in Spanish.

24         **INTERPRETER ZAVALA:**  [ADA statement read in

25    Spanish.]

26         **PRESIDING COMMISSIONER DAVIS:**  According to our

27    records, on February 14th, 2006, together with staff in

3

1    the institution, you reviewed and signed a BPT Form

2    1073, indicating that you do not have any disabilities

3    that would qualify under the Americans with Disabilities

4    Act; however, you do need a Spanish interpreter, which

5    of course, is why Mr. Zavala is here today.  Has

6    anything changed since that time, sir?

7         INMATE MONTENEGRO TRHOUGH INTERPRETER:  No.

8         PRESIDING COMMISSIONER DAVIS:  All right, very well.

9    And did you have an interpreter with you when you

10   reviewed your C-File?

11        INMATE MONTENEGRO TRHOUGH INTERPRETER:  Yes.

12        PRESIDING COMMISSIONER DAVIS:  All right.  And for

13   the psychological examination, which you took in 2002?

14        INMATE MONTENEGRO TRHOUGH INTERPRETER:  Yes.

15        PRESIDING COMMISSIONER DAVIS:  All right, very well.

16   You're able to hear us all right?

17        INMATE MONTENEGRO TRHOUGH INTERPRETER:  Yes.

18        PRESIDING COMMISSIONER DAVIS:  And you made it here

19   today under your own power?  You're able to walk here?

20        INMATE MONTENEGRO TRHOUGH INTERPRETER:  Yes.

21        PRESIDING COMMISSIONER DAVIS:  All right.  Is there

22   any reason that you can think of why you would not be

23   able to actively participate in this hearing today?

24        INMATE MONTENEGRO TRHOUGH INTERPRETER:  Excuse me?

25        PRESIDING COMMISSIONER DAVIS:  Is there any

26   reason -- anything that you can think of that would

27   preclude you from actively participating in this hearing

4

1   today?

2        INMATE MONTENEGRO TRHOUGH INTERPRETER:   No.

3        PRESIDING COMMISSIONER DAVIS:   All right, very well.

4   Counsel, you're satisfied with that as well?

5        ATTORNEY SPARKS:   Yes.

6        PRESIDING COMMISSIONER DAVIS:   All right.   Thank

7   you.   This hearing is being conducted pursuant to Penal

8   Code sections 3041 and 3042 and the rules and

9   regulations of the Board of Prison Terms governing

10   parole consideration hearings for life inmates.   The

11   purpose of today's hearing is to once again consider the

12   number and nature of the crimes for which you were

13   committed, your prior criminal and social history, and

14   your behavior and programming since your commitment.

15   We've had the opportunity today to review your Central

16   File and your prior transcript, and you will be given

17   the opportunity to clarify the record as we proceed.   We

18   will reach a decision today and inform you of whether or

19   not we find you suitable for parole and the reasons for

20   our decision.   If you are found suitable for parole, the

21   length of your confinement will be explained to you.

22   Nothing that happens here today will change the findings

23   of the court.   The Panel is not here to retry your case,

24   the Panel is here for the sole purpose of determining

25   your suitability for parole.   Do you understand that,

26   sir?

27        INMATE MONTENEGRO TRHOUGH INTERPRETER:   Yes.

5

1    **PRESIDING COMMISSIONER DAVIS:**  Thank you.  This

2    hearing will be conducted in basically two phases, first

3    I will discuss with you the crime for which you were

4    committed, as well as your prior criminal and social

5    history; and Commissioner Blonien will then discuss with

6    you your progress since your commitment, your

7    counselor's report, psychological evaluation, parole

8    plans, and any literature of support or opposition as

9    they may exist.  Once that is concluded, the

10   prisoners -- the Commissioners, excuse me -- and the

11   District Attorney, and your attorney will have an

12   opportunity to ask you questions.  Questions that come

13   from the District Attorney will be asked through the

14   Chair, and you will respond back to the Panel with your

15   response.  Next, the District Attorney and then your

16   attorney will be given an opportunity to make a final

17   closing statement and then followed by your closing

18   statement.  Your closing statement should focus on your

19   suitability for parole.  The California Code of

20   Regulations states that regardless of time served, an

21   inmate shall be found unsuitable for and denied parole

22   if, in the judgment of the Panel, the inmate would pose

23   an unreasonable risk of danger to society if released

24   from prison.  And now you have certain rights, those

25   rights include the right to a timely notice of this

26   hearing, the right to review your Central File, and the

27   right to present relevant documents.  Counsel, are you

6

1    satisfied your client's rights have been met to date?

2        **ATTORNEY SPARKS:**  Yes.

3        **PRESIDING COMMISSIONER DAVIS:**  Thank you.  You have

4    an additional right, and that is to be heard by an

5    impartial panel.  Now you've heard your panel introduce

6    themselves this morning, is there any reason for you to

7    believe that we would not be impartial?

8        **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  (Inaudible).

9        **PRESIDING COMMISSIONER DAVIS:**  Thank you.  You will

10   receive a written copy of our tentative decision today.

11   That decision becomes effective in 120 days.  A copy of

12   the decision and a copy of the transcript will be sent

13   to you.  The Panel -- the Board -- has eliminated its

14   appeal process; if you disagree with anything in today's

15   hearing, you have the right to go directly to court with

16   your complaint.  You are not required to admit your

17   offense or discuss your offense; however, once again,

18   the Panel does accept the findings of the court to be

19   true.  Do you understand that, sir?

20       **INMATE MONTENEGRO TRHOUGH INTERPRETER:**  Yes.

21       **PRESIDING COMMISSIONER DAVIS:**  Okay.  Commissioner,

22   are we going to be dealing with anything from a

23   confidential file today?

24       **DEPUTY COMMISSIONER BLONIEN:**  There's no

25   confidential information.

26       **PRESIDING COMMISSIONER DAVIS:**  All right.  Then I'm

27   going to pass a checklist and documents to both counsel,

7

1    if you'll take a look at that to make sure we're all

2    operating off the same list of documents.  The

3    prosecution, do you have those documents as well?

4        **ATTORNEY CUTLER:**  Yes.

5        **PRESIDING COMMISSIONER DAVIS:**  All right.  Then

6    we'll mark that Exhibit 1.  Counsel, anything additional

7    you would like us to consider today?

8        **ATTORNEY SPARKS:**  No, thank you.

9        **PRESIDING COMMISSIONER DAVIS:**  All right.  Any

10   preliminary objections?

11       **ATTORNEY SPARKS:**  No.

12       **PRESIDING COMMISSIONER DAVIS:**  All right.  Will your

13   client be speaking with us today?

14       **ATTORNEY SPARKS:**  Yes, but he won't be talking about

15   the crime.

16       **PRESIDING COMMISSIONER DAVIS:**  All right.  If there

17   are no other matters -- if you'll raise your right hand.

18   Do you solemnly swear or affirm that the testimony you

19   will give at this hearing will be the truth and nothing

20   but the truth?

21       **INMATE MONTENEGRO:**  Yes.

22       **PRESIDING COMMISSIONER DAVIS:**  All right, thank you.

23   For a summary of the crime, I'm going to refer to the

24   probation officer's report starting on page 2 under the

25   heading of offense.  It starts on the first paragraph,

26   where it states that:

27            "On November 13th, 1985, Santa Maria police

8

1    officers responded to El Conquistador Bar at

2    210 South Bloosser, B-L-O-O-S-S-E-R,

3    Santa Maria, to investigate a shooting.

4    Officers found Antonio Hernandez Cardona,

5    C-A-R-D-O-N-A, age 22, slumped in the right

6    front passenger's seat of an automobile.

7    Officers observed a gunshot wound into the

8    front of his neck. An ambulance was called and

9    he was taken to Maria Medical Center, where he

10   died at 2315 hours. Doctors concluded the

11   victim died as a result of a gunshot wound to

12   the anterior neck slash chest, exiting through

13   the back. A second entry wound in the left

14   shoulder revealed a .44 caliber bullet. The

15   victim was shot three times. Investigations

16   revealed the victim was the alleged boyfriend

17   of Lilliana Beltran, B-E-L-T-R-A-N, and they

18   had been inside the El Conquistador Bar.

19   Ms. Beltran left the bar and went outside to

20   the victim's car. The defendant followed

21   Ms. Beltran out to the car, sat down in the

22   car, and tried to kiss her. The victim came

23   out of the bar with two friends, saw what was

24   going on, and pulled the defendant out of the

25   car. The victim and defendant verbally argued.

26   The defendant pulled a .44 Magnum pistol from

27   his waistband and fired three or four shots

9

1        into the victim.  The defendant fled the area.

2        The defendant told officers upon his arrest he

3        had hidden in a cardboard box in an alley until

4        daylight, had been in Reedley, California, and

5        had gone on to Mexico, and for the past three

6        years had been living in Guadalupe."

7        Under prisoner's version, as listed in the June 2002

8    Board Report, it states that in an interview for the

9    Montenegro -- an interview for this report, Montenegro

10   indicated that his previous interview with staff

11   psychiatrist Cheema, C-H-E-E-M-A, on 1/16/96, he

12   indicated that his present version remained the same.

13   Montenegro stated that he was involved in a fight with

14   an unknown --

15       **DEPUTY COMMISSIONER BLONIEN:**  Just a question.

16   Mr. Sparks, you're aware that in the '02 psych report

17   there's a different version.

18       **ATTORNEY SPARKS:**  Well, there's probably three

19   versions total.

20       **DEPUTY COMMISSIONER BLONIEN:**  Right.

21       **ATTORNEY SPARKS:**  So, I'm not sure which one you

22   want to refer to ...

23       **PRESIDING COMMISSIONER DAVIS:**  Well, we're going to

24   refer to all the ones that we have, actually, so we'll

25   have this and plus --

26       **DEPUTY COMMISSIONER BLONIEN:**  They're very --

27       **PRESIDING COMMISSIONER DAVIS:**  -- we have the psych

10

1    that we're going to --

2    **DEPUTY COMMISSIONER BLONIEN:**  They're very

3    conflicting, and I don't know if he understood when he

4    talked to his counselor and referred to the psych

5    report, he really meant the '96 psych report where he

6    said he had no responsibility, or the '02 psych report

7    where he took full responsibility.  And so since this is

8    only his first hearing, for Subsequent Hearing, I know

9    you want the record clear.

10    **ATTORNEY SPARKS:**  His statement to me was that he

11    shot the victim.

12    **DEPUTY COMMISSIONER BLONIEN:**  So that's in the '02

13    psych report.  I believe in the '96 psych report he said

14    he did not.

15    **PRESIDING COMMISSIONER DAVIS:**  Why don't we do this,

16    we'll go ahead and go through this part of this, that

17    will give us at least a chronology for now, and when we

18    get to this part of it, and then when we get to the

19    psych report, we'll cover that as well.

20    **DEPUTY COMMISSIONER BLONIEN:**  Okay.

21    **PRESIDING COMMISSIONER DAVIS:**  So we'll have

22    (inaudible).  Is there a third?

23    **ATTORNEY SPARKS:**  Maybe, but not right now.

24    **PRESIDING COMMISSIONER DAVIS:**  All right.  So we'll

25    have at least everything on the record for this time,

26    and then we'll get it from there.

27    **ATTORNEY SPARKS:**  Okay.